UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


DEREK RENE EDMONDS                                                    PETITIONER


v.

                                            CIV.  ACTION NO. 3:15-cv-00859-CRS


WARDEN AARON SMITH                                                RESPONDENT


**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

**FINDINGS OF FACT**


Derek Edmonds is a Kentucky prisoner now serving a state sentence of life without the

possibility of parole for his role in the 2004 robbery, sodomy and murder of Clifton Agnew.  In

the early morning hours of April 6, 2004, Derek Edmonds, his younger brother, Dwayne

Edmonds, and a third man, Tyreese Hall, chanced upon Agnew, a homeless, schizophrenic man

sleeping in an alley way behind the Salvation Army building in Louisville, Kentucky.  Evidence

at trial would show that the Edmonds brothers and Hall robbed Agnew, kicked him, punched

him, stabbed him and knocked him unconscious with a crockpot.  The unconscious Agnew was

then repeatedly impaled on 27"long jagged wooden stick which was forced through his rectum

up into his abdominal cavity where it penetrated his left lung.

The comatose Agnew never regained consciousness and ultimately died nearly eight

weeks later as a result of his severe head and abdominal injuries.  Although Hall and Derek

Edmonds both denied that either of them sodomized Agnew, the jury convicted both men on all

1

counts.  Hall received a sentence of life without the possibility of parole for 25 years for the murder, a 25 year sentence for first-degree sodomy, and a 20 year sentence for first-degree robbery.  Derek Edmonds received a sentence of life without the possibility of parole or probation for the murder, 20 years for first-degree robbery, and following appeal, a corrected sentence of life for first-degree sodomy.[1]

The convictions of both men were affirmed by the Supreme Court of Kentucky on direct appeal in December 2009.[2]  In 2012, the District Court for the Western District of Kentucky adopted a Report and Recommendation of the undersigned Magistrate Judge that denied Tyreese Hall's 28 U.S.C. § 2254 petition for habeas corpus relief from his conviction.[3]  Two years later, on April 15, 2014, the Court of Appeals for the Sixth Circuit affirmed the denial of habeas corpus relief for Hall.[4]  The Kentucky Court of Appeals the following year in an opinion rendered on February 27, 2015 affirmed the denial of Derek Edmonds' state motion for post-conviction relief pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42.[5]  The Kentucky Supreme Court denied Edmonds' motion for discretionary review eight months later that October, which led him the following month in November of 2015 to bring his present petition for § 2254 relief.

---

[1] Dwayne Edmonds pled guilty during the trial to one count of second-degree robbery and was sentenced to eight years of imprisonment. (DN 15, Appx 127-129, Order on Open Guilty Plea). Accordingly all references herein to Edmonds, unless otherwise designated, are to Derek Edmonds.

[2] *Edmonds v. Commonwealth*, Nos 2007-SC-350-MR, 2007-SC-359-MR, 2009 WL 4263142 (Ky. Dec. 1, 2009).

[3] *Hall v. Beckstrom*, Civ. Action No. 3:11-CV-404-H, 2012 WL 4483816 (W.D. Ky. July 16, 2012).

[4] *Hall v. Beckstrom,* 563 Fed. Appx. 338 (6th Cir. Apr. 15, 2014).

[5] *Edmonds v. Commonwealth*, No. 2013-CA-1467-MR, 2015 WL 865440 (Ky. App. Feb 27, 2015).

Edmonds raises eight constitutional claims in his petition.[6]  First, he argues that the state trial court during his three-week long trial in 2007 violated his 6th and 14th Amendment rights to Due Process when it limited each defendant to a jury voir dire of two minutes per prospective juror while prohibiting defense counsel from asking leading questions or questions related to specific types of mitigation.  Second, he contends that the trial court violated the same federal constitutional rights during jury selection when it failed to grant his "for cause" challenges to various jurors, and all African-American jurors were struck from the jury.  Third, he claims that his Due Process right to a fundamentally fair trial was violated when the trial court permitted prosecution witness, Kaye Thomas, a public relations professional unrelated to Agnew, to testify during the guilt phase of the trial concerning her observations of the comatose victim, the public outpouring of support for him during the 53 days that he lay comatose and the thousands of get well cards sent to him from around the world.

Fourth, Edmonds insists that the trial court also violated his 6th and 14th Amendment rights to Due Process when it instructed the jury not to consider the trial testimony given by various Louisville police officers concerning an eye-witness identification of Defendant Hall made by Larry Milligan, an absent witness, who failed to identify Edmonds as one of the two men he claimed that he saw in the alley behind the Salvation Army facility at the time Agnew was attacked.  Because all of these initial, four grounds for relief were raised by co-defendant Hall in his § 2254 petition, and rejected on their merits by both the District Court and the Sixth Circuit in their respective opinions, the "law of the case" doctrine precludes Edmonds from obtaining relief on any of these first arguments.

In ground five, Edmonds argues that the trial court violated his constitutional right to Due Process, as well as his 1st Amendment Right to Freedom of Religion, when it refused to allow his

---

[6] (DN 1, Petition for Habeas Corpus Relief).

trial attorney in closing argument to compare Edmonds to Jesus Christ at the crucifixion, or to contrast Edmonds with other, more notorious criminals such as "Jack the Ripper, Jeffrey Dahmer or John Wayne Gacy."  Edmonds argues in ground six of his § 2254 petition that his 6th Amendment constitutional right to compulsory process was violated when the trial court denied him full access to the psychiatric records of co-defendant Tyreese Hall, where Hall's extensive mental health records supposedly established a long-standing history of severe mental illness that adversely affected his ability to recall, comprehend and accurately testify at trial.

Edmonds argues in ground seven that the trial court violated his right to Due Process when it failed to find him incompetent to stand trial based on his documented history of mental retardation and it supposedly advised defense counsel that Edmonds could not testify in his own defense at trial.  Finally, he maintains that both his trial and appellate attorneys repeatedly rendered ineffective assistance of counsel in violation of the Sixth Amendment as applied in *Strickland v. Washington*, 466 US 668 (1984).  Because these final four arguments were either reasonably rejected on their merits in the state courts, or were otherwise properly held to be procedurally defaulted, the Magistrate Judge shall also recommend that Edmonds be denied 2254 relief as to this final group of constitutional arguments, as well as, a certificate of appealability as to all grounds raised in his petition.

# I.

## Procedural History

### A.  Pretrial Proceedings

On April 15, 2004 a grand jury seated in the Jefferson County, Kentucky, returned a three-count indictment against Derek Edmonds and Tyreese Hall in case no. 04-CR-1179.  The

indictment charged both men with first-degree sodomy, first-degree assault, and first-degree robbery of Clifton Agnew.[7] Following Agnew's death on May 29, the grand jury returned a second indictment that charged Hall and both of the Edmonds brothers with murder and Dwayne Edmonds with first-degree sodomy and first-degree robbery in case no. 04-CR-2445.[8]  The two indictments were consolidated on the motion of the prosecutor in October 2004.  The prosecutor subsequently filed a notice of aggravating circumstances pursuant to KRS 532.025(2)(a) to prosecute the case as a death penalty case in February 2005.[9] The trial court, however, in October 2005 determined that Hall was a seriously mentally retarded individual under KRS 532.130, and thus ineligible for the death penalty because he met "the criteria for a retarded person under *Atkins vs. Virginia*, 536 US 304 (2002)."[10]

Two months later in December of 2005, Edmonds moved the trial court to order Tyreese Hall to make available his medical and psychological records and to submit to an independent psychological evaluation.[11] Edmonds based his motion in part on the prior hearing testimony of psychologist Wayne Herner and the reports of Drs. Archana Barry and Cecilia Messa, which Edmonds explained called into question the ability of the mentally retarded Hall to accurately perceive matters, recollect facts and understand his obligations as a sworn witness at trial.[12] The trial court denied Edmonds' motion for Hall's mental health records on January 19, 2006 after an *in camera* review of Hall's juvenile health records.[13] In doing so, the trial court explained that:

> The information contained in Hall's juvenile file (some 5-10 years prior to the acts alleged herein) are [sic] not sufficient evidence under *Commonwealth v. Barroso*, 122 S.W.3d 554 (Ky. 2003) to establish a reasonable belief that the

---

[7] (DN 15 Answer, State Court Appendix (Appx), pp. 12-14, April 2004 Indictment).
[8] (DN 15, Appx 15-17, August 2004 Indictment ).
[9] (DN 15, Appx 18-20, Notice of Aggravating Circumstances).
[10] (DN 15, Appx 21, Order of October 21, 2005).
[11] (DN 15, Appx 22-25, Motion for Records and Independent Psychological Evaluation).
[12] Id.
[13] (DN 15, Appx 26-28, Order of January 19, 2006).

records requested contain evidence exculpatory to either Edmonds [brother].
Hall's Fifth Amendment rights further prevent such relief.

(DN 15, Appx 26, Order of Jan. 19, 2006).  A renewed motion for Hall's mental health records filed by both of the Edmonds brothers was denied by the trial court later in January 2007.[14]

In the interim, on January 25, 2006 Derek Edmonds filed a motion for an emergency competency hearing.[15] Edmonds maintained therein that reasonable grounds existed to believe he lacked the capacity to appreciate the nature and consequences of the proceedings or to rationally participate in his defense based on the report of licensed clinical psychologist Peter Schilling, PhD.  The trial court, based on Dr. Schilling's psychological evaluation, [16] ordered that Edmonds be referred to the Kentucky Correctional Psychiatric Center (KCPC) for in-patient psychological evaluation to determine his competency.[17] After a competency hearing held on July 31, 2006, at which time both Dr. Schilling and Dr. Steve Simon testified, the trial court found Edmonds to be legally competent to stand trial based on Dr. Simon's testimony.[18] The trial court, at the same hearing, also heard Derek Edmonds' argument that the death penalty should be excluded as a possible sentence due to his mental retardation.[19]

The trial court denied this motion by order of October 12, 2006.[20] In its order, the trial court found that Edmonds' full scale IQ scores of 71, 73 and 71 showed that he could not meet the "significantly sub average intellectual functioning" criteria for Kentucky's statutory definition of "mental retardation" found in KRS 532.130, which defines a seriously mentally

---

[14] (DN 15, Appx 27-28, Renewed Motion; Appx 126, Order Denying Motion to Reconsider ).
[15] (DN 15, Appx 45-46, Emergency Motion).
[16] (DN 15, Appx 78-87, Psychological Evaluation).
[17] (DN 15, Appx 47-48, Order for Competency Evaluation).
[18] (DN 15, Appx 115, Competency Order).
[19] (DN 15, Appx 116-123, Motion To Exclude Death Penalty; Appx 124-125, Order Denying Motion to Exclude).
[20] (DN 15, Appx 124-25, Order denying Motion to Exclude Death Penalty).

retarded offender to be a defendant with an IQ of 70 or below, who has substantial deficits in adaptive behavior manifested during the developmental period.[21]

Prior to trial, co-defendant Hall filed a motion in limine to exclude the eye witness statement provided by Larry Milligan to police on April 6, 2004. Milligan in his statement identified Hall as one of two men he claimed to have seen in the alley attacking Agnew. Milligan, however, was not able to identify Edmonds as the other individual. The trial court granted Hall's motion in limine on January 25, 2006,[22] but denied a separate motion by Hall to suppress his own post-arrest statements to police given on April 6 and July 20, 2004. The trial court determined that, as to the latter motion, although Hall was mentally retarded, his limited mental faculties were only one factor to consider, and that no evidence indicated any attempt by the police to take advantage of Hall based on his limited intelligence or any other alleged coercion. The trial court further determined that the LMPD detective who conducted the interrogations, Det. Williamson, did not fail to adequately provide Hall with his *Miranda* rights on either occasion. Dewayne Edmonds likewise filed a motion in limine to exclude not only Hall's prior statements to the Detective, but the testimony of Kaye Thomas as well, which his brother Derek joined in and the trial court denied as to both brothers.[23]

In mid-December 2006, Hall agreed to waive his Fifth Amendment right not to testify in return for the promise of the Commonwealth not to seek a sentence of life without the possibility of parole.[24] Hall entered into the agreement based on the earlier denial of his motion to suppress his post-arrest statements. In his agreement, he promised to be available to testify for the Commonwealth, but reserved his right to challenge the trial court's denial of his motion to

---

[21] Id.
[22] (DN 15, Appx 40, Order of Jan. 25, 2006).
[23] (DN 15, Appx 41-44, Dewayne Edmonds' Motion in Limine).
[24] (DN 15, Appx 29-31, Hall affidavit).

suppress at a later date.  Hall then filed a number of pretrial motions that included a motion for

participation in individual voir dire, a motion for a separate trial and a motion in limine to

exclude the testimony of Kaye Thomas.[25]  As to the latter motion, Hall argued that the

Commonwealth could not call Thomas as a witness to personalize or humanize Agnew because

she had no relation to the victim, did not meet with the victim until after the assault had occurred

and therefore could not testify from personal knowledge as to his personality or his life activities.

The trial court denied Hall's motion for a separate trial, granted his motion for individual voir

dire on the issues of race and pretrial publicity and denied his motion to exclude Thomas's

testimony at trial.

Immediately prior to the start of trial on January 26, 2007 counsel for all three defendants

renewed their objections to Thomas's anticipated testimony, particularly testimony about the

sympathy card campaign for Agnew prior to his death.  The trial court ruled that Thomas would

be permitted to testify about letters she read to Agnew as he lay comatose in the hospital and to

her observations of his physical injuries, but would not be allowed to testify about what other

individuals did for Agnew including any sympathy or get well cards he may have received as a

result of her nationwide efforts.[26]

## B  The Trial Proceedings

Following the presentation of proof at trial, the jury found Edmonds guilty of: murder

under instruction no. 1; first-degree robbery under instruction no. 3; and first-degree sodomy

---

[25] (DN 15, Appx 32-36, Motion in Limine).

[26]  Because the Court has determined that the law of the case doctrine bars consideration of Edmonds' constitutional claims related to the jury selection process, the procedural history related to jury selection and legal analysis of Hall's identical jury-related arguments is not set out herein. Interested readers will find an extended discussion of jury selection in the prior Report and Recommendation entered by the undersigned Magistrate Judge in *Tyreese Hall v Gary Beckstrom, Warden*, No. 3:11-CV-404-H, 2012 WL 4483816  (DN 14, Recommendation at pp. 83-115), *aff'd*, 583 Fed. Appx. 338 (6th Cir. Apr. 15, 2014).

under instruction no. 4.[27]   The proof at trial, as summarized by the Supreme Court of Kentucky

on direct appeal was as follows:

## II. BACKGROUND

Early in the morning of April 6, 2004, Clifton Agnew, a homeless man sleeping
outside near the Salvation Army in Louisville, Kentucky, was beaten, hit with a
crock pot, stabbed in the leg, and robbed. While unconscious, he was sodomized
with a bottle and two sticks, which were shoved up his rectum, into his abdomen,
and through his organs. A police officer saw someone flee the scene, but was
unable to catch the suspect. Two police officers then discovered the victim
bleeding from his head and rectum. He was barely alive, and EMS took him to the
hospital, where he remained unresponsive and in a coma until his death.

A twenty-seven-inch stick and a smaller fifteen-inch stick were recovered from
the alley where the attack occurred; both sticks were covered in the victim's
blood. A broken beer bottle with blood around the neck and a knife were also
found, and police recovered a crock pot, which was dented, broken, and bloody.

Both Appellants were arrested that day. Hall had a swollen hand and blood
spatters on his pants. Edmonds had blood-soaked pants and boots. DNA from the
blood on both Appellants' clothing matched the DNA profile of the victim.

Hall gave a statement to police that day, claiming to have hit the victim on the leg
with the crock pot and admitting to punching him and stabbing him in the leg with
a knife. This statement was recorded and later played at trial.

At another time, Hall signed a statement confessing that he alone robbed and
sodomized the victim, stating that Edmonds had only kicked the victim and then
run away. He later testified that Edmonds pressured him to take the blame, which
is why his original written statement only implicated himself.

Hall later gave a second statement to a detective over the phone wherein he
implicated Edmonds' brother Dewayne in the violence. (He testified at trial that he
did this only to get back at Edmonds, who he believed had gotten him arrested,
and that the brother had not attacked the victim.) While on the phone, he also
admitted to throwing the crock pot, hitting the victim's head, and claimed that
Edmonds had sodomized the victim with a glass bottle. This statement was also
recorded and played at trial.

Hall also testified at the trial, providing details of the attack. He claimed that
Edmonds had been discussing robbing someone that day. Hall, Edmonds, and
Edmonds' brother were walking down an alley on the day of the crime when a
homeless man awoke and rose up. Hall testified that the man was reaching for

---

[27] (DN 15, Appx 142-144, Jury Verdict Forms).

something, so he attacked, punching the man in the face and knocking him down. He claimed he kicked the man and then picked up a crock pot and threw it down on the victim's leg so hard that the crock pot broke. Edmonds' brother picked up the victim's wallet, threw it down, and then left the alley. Edmonds then started punching and kicking the victim. Hall testified that he walked away and came back several times, eventually asking Edmonds to stop. At that point, the victim was unconscious. Hall claimed he then saw Edmonds drag the unconscious victim through the gate in a fence, beat him some more, and that he heard Edmonds say, "I'm going to do him like they did our people back in the day," which Hall claimed referred "to racial stuff." He testified that Edmonds then repeatedly sodomized the victim with a stick for about two minutes.

*2 Edmonds denied having anything to do with harming Clifton Agnew when interrogated by police. He did not testify at trial, but did present multiple witnesses in his defense. Mark Murray and James Ford testified they heard Hall admit committing the crimes, specifically to robbing Agnew, sodomizing him with a bottle and stick, and hitting him with the crock pot. Another witness, Jeffrey Bryant, who had shared a holding cell with Hall, testified that all Hall claimed that Edmonds had done was come to Hall's rescue after the victim grabbed Hall, kicking the victim several times to get him off Hall. Yet another holding-cellmate testified that Hall had impliedly admitted to sodomizing the victim with a stick and hitting him in the head with the crock pot.

At trial, the victim's doctor and the medical examiner testified about his injuries. Dr. Bill Smock treated the victim in the emergency room, and he testified that the victim was bleeding from several sites on his head, had two stab wounds in his leg, and had "very significant intra-abdominal Injuries" and a large amount of blood coming from his rectum. He testified, "Some object had been inserted forcefully into the rectum and beyond that into the abdominal cavity and beyond that up into the left lung area." He said that an object had been inserted into the victim's rectum at least twice. He used a chart to describe the injuries and he demonstrated with a prosecutor how long the stick was in comparison to a person's back. He identified eight photographs of the victim taken at the hospital the day he was admitted showing injuries to his face, eyes, ear, and anus.

Dr. Amy Burrows–Beckham performed the victim's autopsy. She testified that the cause of death was "the head injury he sustained when he was assaulted," with a contributing factor of loss of blood due to the extensive injuries to his abdomen and chest.

Appellants were convicted after a jury trial. Edmonds was sentenced to life without the benefit of parole or probation on the murder, life without parole on the sodomy, and twenty years on the robbery. Hall was sentenced to life without the benefit of parole or probation for twenty-five years on the murder, twenty-five

years on the sodomy, and twenty years on the robbery. Their appeals to this Court, therefore, are a matter of right. Ky. Const. § 110(2)(b).

*Edmonds v Commonwealth*, 2009 WL 4263142 at *1-2(Ky. 2009)(footnote omitted).[28]

The jury then considered the penalty phase evidence and on February 15, 2007 ultimately fixed Edmonds' punishment for Agnew's murder at life without the possibility of probation or parole.[29] As earlier noted, the jury fixed Edmonds' punishment at 20 years for the first-degree robbery,[30] and at life for the first-degree sodomy conviction.[31] Hall likewise was found guilty on all charges and the jury fixed his punishment at life without the benefit of probation or parole for 25 years on the murder count, 20 years to serve on the first-degree robbery count and 25 years to serve on the first-degree sodomy count.[32]

On February 21, 2007 Edmonds' trial counsel filed a motion pursuant to RCr 10.24 for a new trial and for judgment notwithstanding the verdict.[33] The motion identified as grounds: the trial testimony of Kaye Thomas; Edmonds' inability to cross-examine Tyreese Hall on his mental state or to consider his juvenile or mental health records; and, the inability of the jury to consider exculpatory evidence in the form of the photo-pack identification results obtained from Larry Milligan, who failed to identify Edmonds as being one of the two attackers Milligan allegedly saw. Edmonds also argued that the guilty verdict of the all-white jury was the result of passion and prejudice.[34] The trial court on April 20, 2007 entered an order that denied, without opinion, Edmonds' motion for new trial and for judgment notwithstanding the verdict.[35] On the

---

[28] A detailed review of the trial testimony accompanied by comprehensive citations to the video trial record may be found at pages 8-18 of the prior Report and Recommendation entered in *Hall v. Beckstrom*, No. 3:11-CV-404-H, 2012 WL 4483816 (W.D. Ky. 2012)( adopting in full DN 14, Recommendation, pp. 8-18).
[29] (DN 15, Appx 159, Verdict Form No. 3).
[30] (Id. at Appx 160, Verdict Form No. 4).
[31] (DN 15, Appx 161, Verdict Form No. 5; Appx 162-63, Judgment on Jury trial).
[32] (DN 15, Appx 165-67, Judgment on Jury Trial).
[33] (DN 15, Appx 168-170, Motion for New Trial).
[34] Id. at 168-169.
[35] (DN 15, Appx 180, Order Denying Motion for New Trial).

11

same date, the trial court entered a separate judgment of conviction and sentence as to each of the two Defendants.[36]

## C.  The Direct Appeal

Edmonds and Hall each took a direct appeal to the Supreme Court of Kentucky with Edmonds filing his notice of appeal on May 16, 2007.[37] On appeal, Edmonds raised seven arguments for relief.  In particular, he argued that:

1. The court limited individual voir dire to two minutes per defendant, and forbade leading questions, and questions on specific types of mitigation. Edmonds was denied his sixth and 14th Amendment right to effective "cause" and peremptory challenges.

2. The court erred by failing to grant proper "cause" challenges, thus depriving Edmonds of unfettered peremptory challenges and an impartial jury; retrial is mandatory under *Shane*.

3. The court erred by allowing – – during the guilt phase – – prejudicial "victim" testimony by a volunteer public relations professional.

4. The court erred by telling the jury not to consider an eyewitness's failure to identify Derek Edmonds, and forbidding Derek from arguing it in closing.

5. The court erred by refusing to allow Edmonds counsel to compare his client to Jesus in guilt phase closing, or to allow examples of worse cases in penalty phase closing.

6. The court violated Edmonds' right to compulsory process by denying full access to Hall's psychiatric records, and an independent psych exam, and denied Edmonds' confrontation rights by refusing to allow impeachment of Hall with his past psych history.

7. The court erred by failing to find Edmonds mentally retarded and incompetent to stand trial.[38]

---

[36] (DN 15, Appx 176-177, Judgment of conviction (Tyree's Hall); Appx 178-179, Judgment of Conviction (Derek Edmonds)).
[37] (DN 15, Appx 181, Notice of Appeal).
[38] (DN 15, Appx 186-192, Arguments listed in Statement of Points and Authorities in Edmonds' brief on direct appeal).

Defendant Hall on direct appeal similarly challenged the admission of the trial testimony of Kaye Thomas, as well as, the hearsay testimony given by various Louisville police officers concerning the photo-pack eyewitness identification of Hall by the absent witness, Larry Milligan.  Hall also challenged the limitations imposed by the trial court on individual voir dire during jury selection along with the rulings of the trial court related to the unsuccessful "for cause" challenges to several jurors.[39] Hall separately challenged his joint trial with Edmonds, given that he was ineligible for the death penalty and Edmonds was not. Finally, he challenged the adequacy of various jury instructions on extreme emotional disturbance, second-degree manslaughter and complicity.[40]

In December of 2009, the Supreme Court of Kentucky rendered its final decision in the direct appeal for both Hall and Edmonds, who were joined on appeal in *Edmonds v. Commonwealth*, App. No. 2007-SC-359, 2009 WL 4263142 (Ky. Dec. 1, 2009).[41] The 7-member majority of the Kentucky Supreme Court rejected all of Hall and Edmonds' joint claims of error in its 42-page opinion. The court held that while the testimony of Kaye Thomas was erroneously admitted in the guilt phase, and that it exceeded the scope of permissible humanizing evidence, the error was nonetheless a harmless one. The court likewise concluded that permitting law enforcement witnesses to give hearsay testimony concerning Larry Milligan's pre-trial, eye-witness identification of Hall from the photo-pack was error, but the error also was a harmless one, particularly as to Edmonds, whom Milligan failed to identify. The court held that no abuse of discretion occurred when the trial court limited individual voir dire questioning of prospective witnesses to two minutes for each Defendant, and excluded leading questions by defense

---

[39] (DN 15, Appx 353-368, Ky. Sup. Ct. Opinion on direct appeal at pp. 6-21).
[40]  Id. at 382-289.
[41] (DN 15, Appx 348-389).

counsel, as well as, specific mitigation questions.[42] Only with regard to the correction of Edmonds' sodomy conviction sentence did the Kentucky Supreme Court grant either party relief on appeal.[43]

## D. Hall's Habeas Corpus Petition

On July 19, 2011, Hall filed a 28 U.S.C. § 2254 petition for writ of habeas corpus in this Court in *Hall v. Beckstrom*, 3:11-CV-00404-JGH-DW. The undersigned Magistrate Judge was assigned Hall's case. Hall raised seven claims of constitutional error, which were described as follows in the resulting Report and Recommendation:[44]

> H[all] now raises seven claims of constitutional error. First he maintains that his right to due process was violated when Kaye Thomas, a local marketing executive and stranger to the victim, was permitted to testify at length during the guilt phase of the trial about her nationwide card and letter campaign on Agnew's behalf under the guise of humanizing the victim. Second, Hall claims that the trial court violated his Sixth Amendment right to confrontation when it allowed several witnesses to testify that Larry Milligan, an absent eyewitness, who told police in a recorded interview that he saw and heard the crime from a nearby building, had identified Hall from a photo pack display as being one of the two men he saw that morning. Hall claims in his third argument that a tape-recorded statement he provided to the police on April 6, 2004, was involuntarily obtained and that a second telephonic statement he provided several months later on July 20, 2004, was taken in violation of his Sixth Amendment right to counsel and his constitutional rights under the Miranda decision.

> Fourth, Hall maintains that the trial court violated his Sixth and Fourteenth

---

[42] Id.

[43] On this final point, the majority in its opinion explained that:

> The judgment of the Jefferson Circuit Court is hereby affirmed. However, with respect to Appellant Derek Edmonds, we reverse and remand for the limited purpose of entry of an amended judgment on his sodomy conviction stating that he received a sentence of life, and not a sentence of life without parole.

*Edmonds*, No. 2007-SC-359, 2009 WL 4263142 at *41.

[44] *Hall v. Beckstrom*, 3:11-CV-00404-JGH-DW (DN 14, Report and Recommendation).

14

Amendment rights when it improperly limited individual voir dire to two minutes per defendant, prohibited leading questions by defense counsel, and forbid any questions concerning specific types of mitigation. Hall claims in his related fifth argument that the trial court violated his Sixth and Fourteenth Amendment rights by refusing to strike for cause jurors who obviously were not impartial. He insists in ground six that the trial court denied him his right to due process by its refusal to give lesser included instructions on murder under extreme emotional disturbance and second-degree manslaughter. Finally, Hall argues in ground seven that he was denied his right to a fair trial by an impartial jury under the Sixth and Fourteenth Amendments when he was forced to stand trial before a death-qualified jury, even though he was not subject to the death penalty due to his mental retardation.

*Hall,* 3:11-CV-00404-JGH-DW (DN 14, Report and Recommendation at pp. 2-3).

The Magistrate Judge rejected all of the above arguments in his Report and

Recommendation.  As for the trial testimony of Kaye Thomas, the Magistrate Judge concluded

that the Supreme Court of Kentucky had reasonably applied *Payne v. Tennessee*, 501 U.S. 808,

817, 827 (1991) to determine that her trial testimony was at worst harmless, state evidentiary

error that did not implicate fundamental fairness under the Due Process Clause .[45] Likewise, the

Magistrate Judge concluded in his Recommendation that the Kentucky Supreme Court

reasonably held under the harmless error standard of *Brecht v. Abrahamson,* 507 U.S. 619

(1993), that the erroneous admission of hearsay testimony about Larry Milligan's pre-trial photo-

pack identification of Defendant Hall had no substantial and injurious effect on the jury's

verdict.  In this regard, the Magistrate Judge concluded that Milligan's out-of-court

identification, admitted through the hearsay testimony of the three LMPD detectives, "did

nothing more than place Hall at a location that Hall acknowledged he was present, at least

intermittently."[46]

The Recommendation continued at pages 83-104 to discuss in depth the merits of all

three of the jury voir dire issues jointly raised by Hall and Edmonds before the Supreme Court of

---

[45] (DN 14 in *Hall v.  Beckstrom,* 3:11-CV-00404-JGH-DW, Report and Recommendation at pp 38-49).
[46] Id. at pp. 50-58.

Kentucky on direct appeal.[47]  Included among these issues were the arguments of both men related to the: (1) two-minute time limit per juror for individual voir dire; (2) the refusal of the trial court to allow specific mitigation questions; and (3) its refusal to permit leading questions. Once again, the Magistrate Judge concluded that the ruling of the Kentucky Supreme Court – – that the individual voir dire conducted by the state trial court fit within the broad discretion of the trial judge – – was reasonable in light of the existing precedent of the U.S. Supreme Court such as *Mu'Min v. Virginia* 500 U.S. 415, 423 (1991), *Morgan v. Illinois*, 504 U.S. 719 (1992) and *Ristaino v. Ross*, 424 U.S. 589, 594-95 (1976).[48]

The District Court adopted the Recommendation of the Magistrate Judge in full by a memorandum opinion and order entered on September 28, 2012.[49]  Hall took an appeal to the United States Court of Appeals for the Sixth Circuit.[50]  The District Court granted Hall a certificate of appealability only on three issues – – (1) the admission at trial of Hall's two post-arrest statements, which Hall claimed were involuntary and taken in violation of *Miranda*, (2) the admission of Kaye Thomas's victim impact testimony during the guilt phase of the trial, and (3) the admission at trial of the hearsay statements concerning Larry Milligan's pre-trial, photo-pack identification of Hall as being one of the two men who attacked Agnew.  The Sixth Circuit concluded as to all three issues, similar to the District Court, that "the Kentucky Supreme Court's decision affirming Hall's conviction and sentence was neither contrary to or an unreasonable application of clearly established federal law, nor based upon an unreasonable determination of the facts." *Hall v. Beckstrom*, 563 Fed. Appx. 338 (6th Cir. Apr. 15, 2014). Hall did not file a petition for a writ of certiorari to request further review by the U.S. Supreme Court.

---

[47] Id. at pp. 83-104.
[48]  Id.
[49] *Hall vs. Beckstrom*, 3:11-CV-00404-JGH-DW, 2012 WL 4483816  (W.D. Ky. 2012)(DN 18, Memo. Opin. and Order).
[50]  *Hall v. Beckstrom*, 3:11-CV-00404-JGH-DW (W.D. Ky. 2012)(DN 20, Notice of Appeal).

**E.  Edmonds' State Post-Conviction Proceedings**

After the Supreme Court of Kentucky in December 2009 entered its final, modified

opinion that affirmed the convictions of Hall and Edmonds, the Commonwealth filed a motion

for the trial court to enter an amended judgment in conformance with the opinion of the Supreme

Court to reduce Edmonds' sentence for first-degree sodomy to one of life imprisonment, rather

than life without the possibility of parole.[51] The trial court entered the amended judgment on

January 21, 2010.[52] Two years later on November 26, 2012, while his co-defendant's § 2254

petition was proceeding through the District Court, Edmonds filed a pro se motion to vacate, set

aside or correct his judgment and sentence pursuant to RCr 11.42 and CR 60.02.[53]

Edmonds argued as the basis for his motion to vacate that he was denied his 6th

Amendment right to effective assistance of counsel at trial and on appeal.  Specifically, he

claimed that his counsel failed to:

> a). "Investigate and prepare a defense by failing to file [a] proper motion to
> conduct a separate trial from co-defendant, who [was] . . . the Commonwealth's
> primary witness."
>
> b). "Raise the proper pre-trial motion to show that, movant is denied the right to a
> fair trial for the offense of murder."
>
> c). "Raise objections to the jury instruction which relieve[d] the Commonwealth
> of meeting its burden of proof, when, the co-defendant had confessed to the
> murder before and during trial."
>
> d). "Raise an objection to the penalty instructions, which permitted the jury to
> recommend an unauthorized aggravated sentence of life."
>
> e). "Raise proper objection during trial to preserve record for appellate review,
> and; appeal counsel was ineffective for failing to research record and present
> issues on appeal, which affected movant's fundamental rights to a fair trial."

---

[51] (DN 15, Appx 412-413, Motion to Enter Amended Judgment).
[52] (DN 15, Appx 414, Amended Judgment of Conviction).
[53] (DN 15, Appx 415-423, RCr 11.42 Motion to Vacate).

f).  Movant submits that he is entitled to a new trial based on the criteria set forth
in the leading case on an ineffective assistance of counsel *Strickland v.
Washington*, 466 US 668 (1984).[54]

Edmonds argued in the memorandum that accompanied his motion to vacate that his trial

attorney should have moved for a separate trial from co-defendant Hall in view of Hall's self-

incriminating statements to police admitting his involvement in Agnew's murder.  For the same

reason, Edmonds argued that Hall's confession should have led his trial counsel to object to the

jury instructions given the supposed insufficient evidence of Edmonds' own involvement in

Agnew's murder.[55]

The trial court granted Edmonds' request to proceed *in forma pauperis* and ordered the

appointment of counsel from the Kentucky Department of Public Advocacy (DPA) to represent

Edmonds on his RCr 11.42 motion to vacate.[56] After review of the record, the appointed DPA

attorney moved for leave to withdraw as counsel because Edmonds' post-conviction proceeding

"is not a proceeding that a reasonable person with adequate means would be willing to bring at

his or her own expense" under KRS § 31.110(2)(c).[57] The trial court granted the motion on

February 26, 2013.[58] The Commonwealth filed its Response to Edmonds' Motion to Vacate.[59]

After Edmonds filed his Reply,[60] the trial court entered an order on August 2, 2013 that denied

Edmonds's motion.[61]

In its order, the trial court concluded that Edmonds had not satisfied the *Strickland*

standard for ineffective assistance of counsel.  Specifically, the trial court ruled that while

Edmonds' trial attorney had not filed a motion for a separate trial from co-defendant Hall, Hall's

---

[54] Id.
[55] Id.
[56] (DN 15, Appx 424, Order Appointing Counsel).
[57] (DN 15, Appx 425, Motion to Allow the DPA to Withdraw as Counsel).
[58] (DN 15, Appx 428, Order Granting Motion to Withdraw).
[59] (DN 15, Appx 429-436, Response to Motion to Vacate).
[60] (DN 15, Appx 438-441, Reply in Support of Motion to Vacate).
[61] (DN 15, Appx 442-443, Order Denying Motion to Vacate).

own attorney had filed just such a motion, which the trial court denied so that, had Edmonds

filed a similar motion, the same result would have occurred.  As for the general claim that his

attorney had failed to adequately research and understand the law, the trial court concluded that

Edmonds had offered no specific facts to support this nondescript allegation and therefore it

failed as a constitutional claim of ineffective assistance of trial counsel.  Finally, the trial court

concluded that because Hall and Edmonds were charged with acting in complicity with one

another to bring about the death of the victim, his trial attorneys were not ineffective for their

alleged failure to object to Edmonds being tried for murder merely because Hall, in several post-

arrest statements, had implicated himself in Agnew's death.[62]

Edmonds filed a *pro se* notice of appeal from this order.[63] On appeal, Edmonds attempted

to raise for the first time post-conviction arguments that his trial attorneys rendered ineffective

assistance of counsel by allowing Kaye Thomas to give victim impact testimony during the guilt

phase of his trial and by their alleged failure to realize that the two signatures of the absent

witness, Larry Milligan, on the photo-pack signature lines did not match one another.[64] Edmonds

likewise attempted to argue on appeal, again for the first time, that his trial counsel rendered

ineffective assistance by failing to challenge his conviction for both sodomy and murder on

double jeopardy grounds.[65] Finally, Edmonds argued that his trial counsel were ineffective for

their failure to file a motion to sever his trial from that of co-defendant Hall.[66]

The Commonwealth in response to these arguments filed an appellee brief on appeal in

which it argued that Edmonds had failed to raise the initial two arguments in the trial court post-

---

[62] Id.
[63] (DN 15, Appx 444, Notice of Appeal).
[64] (DN 15, Appx 450-452, Brief for Appellant, Argument I).
[65] (DN 15, Appx 453-454, Brief for Appellant, Argument II).
[66] (DN 15, Appx 454-456, Brief for Appellant, Argument III).

conviction proceedings and therefore had procedurally defaulted these arguments.[67] Edmonds filed a Reply Brief in which he re-argued the merits of his claims of ineffective assistance of counsel without addressing the argument of procedural default.[68]

On February 27, 2015, the Kentucky Court of Appeals entered an opinion affirming the decision of the trial court to deny Edmonds RCr 11.42 relief.[69] The Court of Appeals agreed with the Commonwealth and held, after setting forth the *Strickland* standard, that "three of Edmonds' four claims fail as being unpreserved; meaning Edmonds did not raise them in his RCr 11.42 motion filed with the trial court."[70] After holding that three of the four claims of ineffective assistance of counsel were procedurally barred, the Court of Appeals continued in its opinion [71]to add that "these three claims are substantively without merit as well."  The Court of Appeals concluded at the end of its opinion, as did the trial court, that because Edmonds' co-defendant Hall had unsuccessfully moved for a separate trial, the decision of Edmonds' own attorneys not to re-file a previously-rejected motion to sever could not be deemed a deficient performance under the first prong of the *Strickland* test for ineffective assistance of counsel.[72]  Thus, this final claim of ineffective assistance was rejected on its merits.

Edmonds then filed an unsuccessful motion for discretionary review to the Supreme Court of Kentucky.[73] The Commonwealth filed a response in opposition to the motion.[74] On

---

[67] (DN 15, Appx 459-482, Commonwealth's Appellee Brief on Post-conviction Appeal).
[68] (DN 15, Appx 484-487, Reply Brief on Appeal).
[69] (DN 15, Appx 488-494, *Edmonds vs. Commonwealth*, 04-CR-001179 & 04-CR-002445, 2015 WL 865440 (Ky. App.  Feb. 27, 2015).
[70] *Edmonds v. Commonwealth*, No. 2013-CA-001467-MR, 2015 WL 865440, at *2 (Ky. Ct. App. Feb. 27, 2015), review denied, (Oct. 21, 2015)
[71] Id.
[72] Id at *3.
[73] (DN 15, Appx 496-508, Motion for Discretionary Review).
[74] (DN 15, Appx 510-514, Response in Opposition).

20

October 21, 2015, the Kentucky Supreme Ct. entered an order that denied discretionary review.[75]

Edmonds then filed his present 2254 a petition.[76]

## CONCLUSIONS OF LAW

### A. Standard of Review

The first question that the Court must address before it may potentially reach the substance of any of the grounds raised in Edmonds's petition is the appropriate standard for review to be applied to those constitutional claims that were considered on their merits and those that were not.   The Court accordingly turns to those decisions that discuss the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996) and its standard of review contained in 28 U.S.C. § 2254(d).  Because Edmonds's petition was filed after the effective date of the AEDPA, its provisions apply in full to the consideration of his case. *Woodford v. Garceau*, 538 U.S. 202, 210, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir.1999).

Under the AEDPA, a federal court shall not grant a writ of habeas corpus to a person in custody pursuant to a state court judgment unless the adjudication of the prisoner's claims in state court: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as defined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  See 28 U.S.C. § 2254(d)(1)-(2)(2004); *Pouncy v. Palmer*, 846 F.3d 144, 158-59 (6th Cir. 2017) (discussing the standard of 28 U.S.C. § 2254(d)(1)-(2)).

---

[75] (DN 15, Appx 516, Order Denying Discretionary Review).
[76] (DN 1, Petition for Habeas Corpus Relief).

The Supreme Court first elaborated on the meaning of this statutory language in *Terry Williams v. Taylor*, 529 U.S. 362, 405-13 (2000). In so doing, the Court noted that § 2254(d) "places a new constraint on the power of the federal courts to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams*, 529 U.S. at 412. A state court decision that resolves a constitutional claim on its merits will be "contrary to" the precedent of the Supreme Court only if the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite] result." *Id.* at 405. *See also*, *Metrish v. Lancaster*, ___ U.S. ___, 133 S.Ct.1781, 1786 n.2 (2013)(quoting *Williams* 529 U.S. at 412-13). *See Treesh v. Bagley,* 612 F.3d 424, 428-29 (6th Cir. 2010)(discussing *Williams*).

A state court opinion will violate the "unreasonable application" clause of § 2254(d)(1) when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011)(quoting *Williams*, 529 U.S. at 413). *See also, Bell v. Cone*, 535 U.S. 685, 694-95 (2002); *Hodges v. Colson*, 727 F.3d 517, 525-26 (6th Cir. 2013); *Phillips v. Bradshaw,* 607 F.3d 199, 205 (6th Cir. 2010)(same). A state court opinion will not be an "unreasonable application" of Supreme Court precedent merely because it does not extend or refuses to extend a legal principle from Supreme Court precedent to a new context. *White v. Woodall*, ___U.S. ___, 134 S.Ct. 1697, 1706 (2014); *Keys v. Booker*, 798 F.3d 442, 456 (6th Cir. 2015)(same).

The Supreme Court in *Williams* explained that "a federal court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. The term "objectively

22

unreasonable" means that "[a] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.  *See also, Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Owens v. Guida*, 549 F.3d 399, 404-05 (6th Cir. 2008) ("Ultimately, the AEDPA's highly deferential standard requires that this court give the state-court decision 'the benefit of the doubt.'") (quoting *Slagle v. Bagley*, 457 F.3d 501, 514 (6th Cir 2006)). *See also, Uttecht v. Brown,* 551 U.S. 1, 10 (2007)(The requirements of the AEDPA "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings.")

As the Supreme Court explained in *Harrington v. Richter*, 562 U.S. 86, (2011), "A state court's determination that a [constitutional] claim lacks merit precludes federal habeas relief so long as "fair-minded jurists could disagree" on the correctness of the state court's decision." *Id.* at 102 (citing *Lockyer v Andrade*, 538 U.S. 63 (2003)).  The question in this regard is not whether the habeas court would have reached the same conclusion as the state court on *de novo* review, but rather whether reasonable jurists could debate the existence of arguments, based on existing Supreme Court precedent, that would support the outcome below. *Id.*  If so-- if the challenged result was at least reasonably debatable-- even in those instances in which the state court does not reveal the reasoning for its outcome, then the habeas court must uphold the decision of the state court.  *Id.( Renico v. Lett,* 559 U.S. 766, 772 (2011)). *See O'Neal v. Bagley,* 728 F.3d 552, 557 (6th Cir. 2013)("In other words, ...[petitioner] must show that the challenged decision rested on "an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement.") (quoting, *Harrington,* 131 S. Ct. At 786-87).

This standard of review is intentionally a difficult one to satisfy and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*(citing *Lockyer v. Andrade*, 533 U.S. 68, 71 (2003)); *Renico,* 559 U.S. at 773(the "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'")(quoting *Lindh v. Murphy,* 521 U.S. 320, 333 n. 7 (1997)); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003)("[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system.").

In essence, § 2254(d), as amended by the AEDPA, only "preserves authority to issue the writ in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther." *Harrington,* 562 U.S. at 102. Habeas corpus relief consequently stands as a guard against only "'extreme malfunctions in the state criminal justice systems'" rather than a means to correct ordinary errors.  *Id.* at 103 (*Jackson v Virginia*, 443 U.S. 307, 332 n. 5( 1979)).  *Montgomery v. Bobby*, 654 F.3d 668, 676-77 (6th Cir. 2011) ("The Supreme Court has made clear that § 2254(d), as amend by the AEDPA is a purposefully demanding standard.")(citing *Harrington*). It is "a substantially higher threshold" for obtaining relief that *de novo* review.  *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007).

When determining the "clearly established federal law," the courts may look only to the holdings of decisions of the Supreme Court of the United States at the time the petitioner's state conviction became final.  *Williams*, 529 U.S. at 380; *Abella v. Martin*, 380 F.3d 915, 924 (6th Cir. 2004).  It is error for the federal courts to rely solely on authority other than the Supreme Court of the United States in their analysis under § 2254(d).  *Harris v. Stovall*, 212 F.3d 940, 944 (6th

Cir. 2000), *cert. denied*, 532 U.S. 947 (2001).  The decisions of lower federal courts may be considered, however, as being informative of whether a legal principle or right has been clearly established by the Supreme Court.  *Smith v. Stegall*, 385 F.3d 993, 997-98 (6th Cir. 2004).

Additionally, the AEDPA standard of review will only apply to those claims that were "'adjudicated on the merits in the state court proceedings.'" *Harrington,*562 U.S. at 98; *Nali v. Phillips,* 681 F.3d 837, 841 (6th Cir.), *cert denied,* 133 S.Ct. 525 (2012); *Phillips,* 607 F.3d at 205 (*quoting Hartman v. Bagley,* 492 F.3d 347, 356 (6th Cir. 2007)).  *See also, Montes v. Trombley,* 599 F.3d 490, 494 (6th Cir. 2010)("if a claim is fairly presented to the state courts, but those courts fail to adjudicate the claim on the merits, then the pre-AEDPA standards of review apply").  Claims that the state court resolves without deciding the federal constitutional issues, for example when they are held to be procedurally barred, are reviewed under the pre-existing law that predates the AEDPA.  *Coley v. Bagley,* 706 F.3d 741, 749 (6th Cir.), *cert denied,* 134 S. Ct. 513 (2013).  *See also, Cone v. Bell*, 556 U.S. 449, 129 S.Ct. 1769, 1784, 173 L.Ed.2d 701 (2009).

Under such review, questions of law, including mixed questions of law and fact, are reviewed de novo, and questions of fact are reviewed under the clear-error standard. *Nichols v. Heidle,* 725 F.3d 516, 557 (6th Cir. 2013)("'Claims that were not adjudicated on the merits in [s]tate court proceedings receive the pre-AEDPA standard of review: de novo for questions of law (including mixed questions of law and fact), and clear error for questions of fact.'"); *Brown v. Smith*, 551 F.3d 424, 430 (6th Cir.2008); *Sowell v Anderson,* 663 F.3d 783, 789 (6th Cir. 2011)(discussing the pre-AEDPA standard of review). *See gen  Johnson v. Beckstrom,* 2011 WL 1808334 at *12, 26 (E.D. Ky. May 12, 2011)(describing *de novo* review as being a "narrow sliver" in which review of a habeas corpus claim is otherwise appropriate).

Merely because a state court does not provide an explicit rationale for its ultimate result, however, does not mean that its judicial decision is not an "adjudication on the merits" for the purposes of § 2254(d). *Harrington,* 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."). Even in those instances in which the state court decision does not include any explanation for the adverse outcome of petitioner's properly raised constitutional claims, petitioner must still show that no reasonable basis existed for the state court to deny relief. *Id.* Indeed, according to *Harrington*, the state court need not even be aware of or cite to the published decisions of the U.S. Supreme Court so long as it does not run afoul of them. *Id.* (pursuant to § 2254(d) "a habeas court must determine what arguments or theories supported or … could have supported, the state court's decision; and then it must ask whether it is possible fair minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.").

When the petitioner's constitutional claim is fully and fairly presented to the state courts, a presumption arises that the state courts adjudicated the disputed claim on its merits absent any indication to the contrary such as a determination based on state procedural law. *Id.* at 99 (citing *Harris v Reed,* 489 U.S. 255, 265 (1989)(presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). *See, Brown v. Bobby*, 656 F.3d 325, 329 (6th Cir. 2011), *cert. denied,* 133 S.Ct. 1452 (2013). Petitioner may overcome such presumption if reason exists to believe that "some other explanation for the state court's decision is more likely." *Id.*

The AEDPA also affords deferential treatment to the findings of fact made by the state court during the proceedings at trial and on appeal. Specifically, 28 U.S.C. § 2254(e)(1)

provides that, "[a] determination of a factual issue made by state court shall be presumed to be correct." *Id. See Thompson v. Bell,* 580 F.3d 423, 434 (6th Cir. 2009)("A habeas court must presume the state court's factual findings are correct.") Further, '[t]he applicant [for § 2254 relief] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Mahdi v. Bagley*, 522 F.3d 631, 636-37 (6th Cir. 2008). The factual findings of the state courts are reversed only if the petitioner establishes that they are clearly erroneous. *See Williams v. Bagley*, 380 F.3d 932, 941-42 (6th Cir. 2004); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (presumption of correctness applies to fact findings made by a state appellate court based on the state trial record). *See also, Sumner v. Mata*, 449 U.S. 539, 546 (1981) (holding that § 2254 makes no distinction between the factual determination of a state trial court and those of the state appellate court). A clear factual error constitutes an unreasonable determination of the facts in light of the evidence presented if the state court's determination of facts is in conflict with clear and convincing evidence to the contrary. *See Wiggins v. Smith,* 539 U.S. 510, 528-29 (2003).

Finally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster,* 563 U.S. 170, 182-83 (2011). *See, Fitzpatrick v. Robinson,* 723 F.3d 624, 633 (6th Cir. 2013)("In addition to limiting the scope of our review, AEDPA encompasses an evidentiary limitation on federal habeas review. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.")(citing, *Pinholster,* 131 S. Ct. at 1398); *Ballinger v. Prelesnik,* 709 F.3d 558, 561 (6th Cir. ) *cert den'd,* 133 S. Ct. 2866 (2013) (same).

**B. Law of the Case Doctrine**

The AEDPA standard of review applied to constitutional claims adjudicated on their merits in state court is not the only hurdle that Edmonds faces as a state habeas petitioner in this case.  As daunting as that standard may be, Edmonds has a much more pressing problem, one that in the view of the Court forecloses any possibility of substantive review of his initial four grounds for relief.  All four of his initial arguments related to jury voir dire, "for cause" juror challenges, the trial testimony of Kaye Thomas, and the hearsay testimony regarding Milligan's eye-witness identification of Hall were fully considered on their merits by the undersigned Magistrate Judge and by the District Court in the prior 2254 proceeding filed by Edmonds' co-defendant Hall in *Hall v. Beckstrom*, 2012 WL 4483816  (W.D. Ky. 2012).

The Magistrate Judge at pages 24-49 of his prior Report and Recommendation[77] discussed in detail all of co-defendant Hall's identical Due Process arguments concerning the admission of Thomas's testimony.  Ultimately, the Magistrate Judge determined that the Supreme Court of Kentucky reasonably concluded that the improper admission of portions of her testimony during the guilt phase of the trial "was not such an egregious error as to result in a denial of fundamental fairness in violation of due process."[78]

The Magistrate Judge also considered in depth at pages 50-58 of his prior Report and Recommendation all of the arguments related to the erroneous admission of hearsay testimony concerning the pretrial identification of Hall by the absent witness, Larry Milligan.  The Magistrate Judge determined, once again, that the Supreme Court of Kentucky reasonably concluded in accordance with then-existing U.S. Supreme Court precedent that admission of the hearsay testimony in violation of the Confrontation Clause was harmless error under *Brecht*

---

[77] *Hall vs. Beckstrom*, 3: 11-CV-00404-JGH-DW (W.D. Ky. 2012) (DN 14, Report and Recommendation).
[78] Id. at pp.47-48 of Report and Recommendation.

where no "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict" existed.[79] The District Court in its memorandum opinion affirming the Recommendation of the Magistrate Judge agreed, not only with this particular conclusion, but as to all seven of the issues considered and rejected by the Magistrate Judge.[80]

The prior Report and Recommendation entered in Hall's related §2254 proceeding addressed the same voir dire issues that Edmonds now attempts to raise and that Hall previously did raise in ground IV of his 2011 habeas petition.  These issues are discussed at length at pages 83-104 of the Recommendation entered on July 16, 2012.  As before, the Magistrate Judge held that the Supreme Court of Kentucky reasonably applied the existing precedent of the U.S. Supreme Court to reject Hall's voir dire jury selection arguments give the broad discretion of the trial court in matters related to jury selection. *See, Eddings v. Oklahoma*, 455 U.S. 104, 113 (1982) and *Lockett v. Ohio*, 438 U.S. 586, 597 (1978).  The Magistrate Judge further held in the Recommendation at pages 104-115 that the Kentucky Supreme Court likewise, in its decision on direct appeal, properly affirmed the trial court in this respect where no indication existed that the court unreasonably applied any existing US Supreme Court precedent.

Hall obtained a certificate of appealability to seek review by the U.S. Court of Appeals for the Sixth Circuit of five of his arguments including his claims concerning Kaye Thomas's testimony and the hearsay statements by the three LMPD police witnesses regarding the pre-trial, photo-pack identification made by absent eyewitness witness, Larry Milligan.[81] The Sixth Circuit held in its April 15, 2014 opinion on appeal as to Thomas's testimony that Hall had failed to

---

[79] Id. at pp. 56-58.
[80] *Hall vs. Beckstrom*, 3:11-CV-00404-JGH-DW, 2012 WL 4483816  (W.D. Ky. 2012)(DN 18, Memo. Opin. and Order).

[81] *Hall v. Beckstrom*, 563 Fed. Appx. 338 (6th Cir. Apr. 15, 2014).

show prejudice sufficient to warrant habeas corpus relief as required by *Brecht v. Abrahamson*, 507 US 619 (1993) given the overwhelming evidence of guilt presented at trial.[82] The Sixth Circuit likewise concluded as to the erroneous admission of hearsay statements concerning Milligan's photo pack identification that such "statements made no real difference in the outcome of Hall's trial."[83] Accordingly, it ultimately concluded that the decision of the Kentucky Supreme Court was neither contrary to nor an unreasonable application of any clearly established federal law, nor based upon an unreasonable determination of the facts."[84]

The critical question now is whether Edmonds can successfully attempt to reopen all of these prior rulings involving grounds 1-4 of his own § 2254 petition.  The Warden in his Response correctly notes that the issues have already been fully considered on their merits in Hall's 2011 habeas corpus petition.  Ordinarily, the law of the case doctrine provides that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the case.'"  *Adkins vs. Regions Morgan Keegan Select High Income Fund, Inc.*, No. 13-2843, 2016 WL 3636300 at *3 (W.D. Tenn. Mar. 9, 2016) (citing *Stryker Corp. v. TIG Ins. Co.*, No 1:05-CV-51, 2014 WL 198678 at *2 (W.D. Mich. Jan. 15, 2014) (quoting *Pepper v. United States*, 131 S. Ct. 1229, 1250 (2011)).

Only when there is an intervening change in the controlling case law, new material evidence, or a finding that the prior decision of the court was clearly erroneous and would work manifest injustice may the Court depart from its past decisions on a particular issue earlier resolved in the same case.  *United States v. Moored,* 38 F.3d 1419, 1421 (6th Cir. 1994).  These principles of the law of the case doctrine not only apply to decisions made within a single case, but also apply to separate cases that arise from a single action or that are practically identical.

---

[82] *Hall v. Beckstrom*, 563 Fed. Appx.  at 374-75.
[83] Id. at 375-76.
[84] Id.

*United States v. Corrado*, 227 F.3d 528, 533 (6th Cir. 2000).  The fundamental theory behind the doctrine is that "no litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time." *Adkins*, 2016 WL 3636300 at *3(quoting *Disimone v. Browner*, 121 F.3d 1262, 1266-67 (9th Cir. 1997), *vacated on other grounds,* 2016 WL 7431287 (W.D. Tenn. Nov. 15, 2016).

The Sixth Circuit has applied the law of the case doctrine routinely in criminal cases that involve related proceedings by co-defendants who happen to raise the same legal issues in their related direct appeals or their post-conviction proceedings.  For example, the Sixth Circuit applied the doctrine as to co-defendants in a criminal case in *United States v. Hughs*, 505 F.3d 578, 591 (6th Cir. 2007) to reject a subsequent claim regarding jury instructions that had been previously resolved in favor of the government in a prior, related appeal filed by Hughs' co-defendant Blackwell.  The doctrine also was earlier applied in *United States v. Wilson*, No 91-1510, 1992 WL 179240 at *8 (6th Cir. July 28, 1992) (Sixth Circuit panel's holdings in the appeals of three co-defendants became the law of the case as to the identical issues raised in the subsequent appeal of a fourth co-defendant).

In *United States v. Frye*, 20000 WL 32039 at *1 (6th Cir.), *cert. denied,* 530 U.S. 1245 (2000) the Sixth Circuit held that three of the five issues raised by defendant Frye had been previously addressed and resolved adversely to her in the expedited appeal of her co-defendant Holloway so that "this Court's rulings on these issues in the Holloway appeal are now the law of the case." *Id*.  Other district courts in the Sixth Circuit have applied the law of the case doctrine in post-conviction proceedings, as well.  *See United States vs. Corrado*, No 04-CV-72354-DT, 2008 WL 2651421 at 82 (E.D. Mich. June 30, 2008) (applying the law of the case doctrine in a §

2255 criminal proceeding).  *See also United States vs. Wilson* 1992 WL 179240 (6th Cir. 1992) (applying the law the case doctrine to an Equal Protection Clause sentencing challenge under the sentencing guidelines where the Sixth Circuit had previously found the argument to be meritless in a prior published opinion on direct appeal of Wilson's three co-defendants).

Here, Edmonds has not suggested that any intervening change in the law or that new evidence requires the federal courts to revisit the four issues that have previously all been considered at length by the Magistrate Judge and the District Court in *Hall v. Beckstrom*, 3:11-CV-00404-JGH-DW (W.D. Ky. 2012) as well as by the Sixth Circuit in *Hall v. Beckstrom*, 563 Fed. Appx. 338 (6th Cir. Apr. 15, 2014).  He likewise does not remotely make any showing of manifest injustice based on these prior rulings, and could not do so given the highly incriminating nature of the trial evidence, which included testimony that Edmonds' pants legs and his boots were "soaked" with Agnew's blood.  Indeed, if anything, review of the trial evidence shows that the prosecution's evidence against Edmonds was more incriminating than the evidence it offered against Hall. For these reasons, the Magistrate Judge applies the law the case doctrine to reject the initial four arguments raised by Edmonds in his current § 2254 petition in reliance on its prior rulings and those made on appeal by the Sixth Circuit.

## C.  Ground 5:  The Closing Argument

Edmonds argues in the caption to ground 5 of his habeas petition that the trial court violated his 6th and 14th Amendment due process rights when it refused to allow his trial attorney during his guilt phase closing argument to compare Edmonds to Jesus on the crucifix, or to contrast Edmonds with such notorious killers as Jack the Ripper, Jeffrey Dahmer or John Wayne

Gacy.[85] Edmonds raised this argument as ground 5 of his brief on direct appeal to the Supreme

Court of Kentucky.[86]  In that appeal he argued that his private trial counsel enjoyed great latitude

in closing argument under the Free Exercise Clause of the First Amendment to make religious

references such as a comparison of the defendant to Jesus Christ on the cross on Good Friday.[87]

In particular, Edmonds argued that the trial court in sustaining the objection of his co-defendant

Hall violated the rule announced in *Sherbert v. Werner*, 374 US 398, 406-407 (1963) that state

restrictions on religious expression are permitted only when such expression threatens public

safety, peace or order to preclude such religious references.  Accordingly, Edmonds argued that

his "trial counsel had a right to make such comparison . . . particularly if it referenced characters

or holidays that he held sacred as a part of his sincerely held religious faith." [88]

   Similarly, Edmonds argued in the second part of Ground 5 on direct appeal that the trial

court further erred when it granted the objection of the Commonwealth to the attempt of his trial

counsel to argue in closing argument that Edmonds was not Jack the Ripper, Jeffrey Dahmer, or

John Wayne Gacy.  Edmonds maintained that no authority supported the proposition that a

---

[85] (DN 1, Petition).

[86] (DN 15,Appx., 223- 226, Brief on Direct Appeal).

[87] During his closing argument in the guilt phase of the trial, Edmond's counsel, attorney Ricketts, made the
following statement, which resulted in an objection by Hall's attorney:

| | |
|---|---|
| **RICKETTS:….** | And this is just how I want to wrap it up. We are getting ready |
| | to start Lent. There's, you know, what happens on Good Friday |
| | of course. We, we have Jesus Christ being put to death on the |
| | cross. I don't want your belief--- |
| **ANSARI:** | Approach? |
| **JUDGE:** | Yes. |
| | (at the bench) |
| **ANSARI:** | Listen, I'm a Catholic and I agree with Mr Ricketts. |
| | It's not proper for here. It's a, we can't talk about church |
| | in closing argument. |
| **RICKETTS:** | Judge, I'm. I'm making an analogy between the story |
| | and that's proper. |
| **JUDGE:** | It's the same thing. Sustained. Sustained… |

(DN 15, Appx 316-317, Brief for the Appellee, pp. 34-36)

[88] (DN 15, Appx 224-225, Brief on Direct Appeal pp. 31-34).

defendant should be forbidden to argue that he is not as evil as some other well-known miscreant in order to avoid a possible death penalty.  Indeed, Edmonds argued on direct appeal that the very notion of a range of potential penalties suggested the existence of just such a comparison, which was particularly appropriate after the prosecutor in his own closing argument insisted that the charged crimes against Edmonds were "as bad as it gets."  Accordingly, Edmonds concluded that a retrial was required "because the court violated [his] counsel's 1st Amendment right to freedom of religious expression and denied Derek Edmonds his 6th Amendment right to present his defense." [89]

The Kentucky Supreme Court rejected both of these arguments on their merits holding that:

> Edmonds claims it was error for the trial court to sustain objections to his attempts to compare himself to Jesus being put to death on the cross and to "worse" cases like Jack the Ripper, Jeffrey Dahmer, and John Wayne Gacy.
>
> As to the comparison to Jesus, Edmonds claims his First Amendment right to free exercise of religion was violated. Yet, given the direction his attorney was headed, and the fact that this was a closing argument rather than a church service, it is clear that he did not wish to engage in any sort of religious worship or ceremony, and thus this was clearly not an issue of the free exercise of religion.
>
> Generally, "[i]t is unquestionably the rule in Kentucky that counsel has wide latitude in making opening or closing statements." *Brewer v. Commonwealth*, 206 S.W.3d 343, 350 (Ky.2006). However, trial courts retain the sound discretion to limit closing arguments when necessary. While it may not have been necessary to restrict Edmonds' counsel as to these topics, there is also little conceivable benefit to Edmonds from such comparisons. Certainly, it is not likely that their omissions had a substantial effect on the verdict. If error, it was harmless

*Edmonds v. Commonwealth*, 2009 WL 4263142 at *10 (Ky. 2009).[90]

Edmonds at pages 18-20 of his current habeas corpus petition reiterates his earlier arguments before the Supreme Court of Kentucky.  He again contrasts the constitutional

---

[89] (Id. at p. 34.).
[90] (DN 15, Appx 348-407, Ky. Sup. Ct. Opin at p. 22-23.)

limitations on the state prosecution, which "condemn religiously charged arguments," with the "great latitude" given to private trial counsel in closing argument. After quoting the Free Exercise Clause of the First Amendment, and related U.S. Supreme Court decisions in the *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 638 (1943) and *Follett vs. Town of McCormick*, 321 U.S. 573, 575 (1944), Edmonds insists that the trial court improperly placed restrictions on his freedom of religious expression contrary to *Sherbet v. Verner,* 374 US 398, 406-07 (1963), where no threat to public safety, peace or order existed merely because his trial attorney was attempting in closing argument to respond to the prosecutor's own, earlier reference to God in his closing argument and to the trial testimony of Kaye Thomas that Agnew had "met the devil."

The Warden in his response maintains that the decision of the Kentucky Supreme Court is neither contrary to nor an unreasonable interpretation of any clearly established Supreme Court precedent.[91] The clearly established federal law, according to the Warden, is set forth in *Herring v. New York*, 422 U.S. 853, 858 (1975). In *Herring*, the Supreme Court held that the complete refusal of the trial court in a criminal trial to allow defense counsel to present a closing argument violated the Sixth Amendment right of the defendant to have his trial counsel make closing argument on his theory of the defense. *Id.* at 862-63. *Herring* continued, however, to hold that the trial court in all other respects enjoys broad discretion over the manner and content of closing argument to "ensure that [it] . . . does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial." *Herring*, 422 U.S. at 862. *See Burrell v. Court of Common Pleas*, *Cuyahoga County*, No 1:12-CV-01875, 2014 WL 1405406 at *3 (N.D. Ohio Apr. 10, 2014) ("*Herring* gives the trial judge "great latitude in controlling the duration and limiting the scope of closing summations" and allows the court to "limit counsel to a reasonable

---

[91] (DN 15, Response at pp. 59-63)

time," "terminate argument when continuation would be repetitive or redundant," and "ensure

that argument does not stray unduly from the mark, or otherwise impede the fair and orderly

conduct of the trial."); *Burdis v. Withrow*, No. 00-10268-BC, 2002 WL 31748914, at *6 (E.D.

Mich. Nov. 19, 2002)("The Supreme Court endorsed the broad discretion of trial judges in

limiting the scope of closing arguments. *Herring*, 422 U.S. at 863. That discretion is abused

when the limitations placed on argument deprives the defendant of a "meaningful opportunity to

present a complete defense," [*California v*.] *Trombetta*, 467 U.S. 479, 485 [(1984)], but the

assessment of the basic fairness of that opportunity must include consideration of the whole

record."). Consequently, the Warden concludes that the decision of the Supreme Court of

Kentucky to reject this claim on appeal was neither contrary to nor an unreasonable application

of *Herring*, although the decision itself was not cited in the opinion on direct appeal.

The Court is compelled to agree. Edmonds advances no argument that remotely satisfies

the strict standard for habeas corpus relief set out above. His arguments are all merely restated

versions of the same arguments he raised on direct appeal in ground number five of his

appellant's brief. These arguments themselves are singularly unpersuasive to the extent that

Edmonds hopes to assert a claim for violation of freedom of religion under the First Amendment.

First, a claim for violation of freedom of religion made by a state prisoner as a basis on

which to contest his state criminal conviction is not ordinarily a proper independent ground on

which to obtain habeas corpus relief from an otherwise constitutional conviction. *See Sowle v.

Raemisch*, No. 09–C–1150, 2010 WL 3703053 at *1 (E.D. Wis. Sept. 14, 2010)("Neither

freedom of religion nor involuntary servitude are claims within the scope of this habeas corpus

proceeding."). Only when a violation of the U.S. Constitution has "a substantial and injurious

effect on the fact-finders' decision" will a state prisoner be entitled to 2254 relief. *Castle v*

36

*Schriro*, No. CV 08–1036–PHX–MHM, 2009 WL 1883660 at *5 ( D. Ariz June 30, 2009)

(rejecting petitioner's habeas corpus argument that the trial court violated his First Amendment

establishment clause rights when it commented at sentencing that the petitioner had used religion

to deceive his victims, where review of the record confirmed that the trial court had relied on

numerous other valid sentencing factors in arriving at the sentence imposed) (citing *Brecht v.

Abrahamson,* 507 U.S. 619, 623 (1993)).

      Edmonds has not begun to show that fair-minded jurists could not reasonably debate that

the decision of the Kentucky Supreme Ct. on this point was contrary to or an unreasonable

interpretation of *Herring,* or for that matter, *Sherbert v. Verner,* 374 US 398, 406-07 (1963),

which holds that the "Government may neither compel affirmation of a repugnant belief . . ., nor

penalize or discriminate against individuals or groups because they hold religious views

abhorrent to authorities . . . ." *Sherbert*, 374 U.S. at 404 (citing *Torcaso v. Watkins*, 367 U.S. 488

(1961) and *Fowler vs. Rhode Island*, 345 U.S. 67, 73 (1953)).  Obviously, no First Amendment

violation of the Freedom of Religion Clause occurred as to Edmonds merely because the trial

court rejected the efforts of Edmonds' trial counsel to assert counsel's own religious beliefs.

      A close reading of the appellant's brief on direct appeal at pages 31-34[92] reveals the true

nature of Edmonds' First Amendment argument.  The argument was *not* that Edmonds' own

First Amendment rights were violated, but rather that the right to freedom of religion of his trial

counsel was violated by the ruling of the trial court, which precluded his counsel from making

the crucifixion argument.  This conclusion is confirmed repeatedly from the very language of the

brief, which states:

> Even if the Commonwealth felt a comparison to Christ was rubbish, **Edmonds'
> counsel had a right to make such a comparison**, or to relate a religious parable,

---

[92] (DN 15,Appx., 223- 226, Brief on Direct Appeal).

> particularly if it referenced characters or holidays that he held sacred as part of his
> sincerely held religious faith.
> .  .  .  .
> Retrial is required, because **the court violated counsel's 1st Amendment right to**
> **freedom of religious expression** [and] also denied Derek Edmonds his 6th
> Amendment right to present his defense.

(DN 15, Appx 225-226, Brief on Direct Appeal at pp. 33-34) (emphasis added).

The problem of course is that Edmonds has no standing to vicariously assert as a ground

for habeas corpus relief the personal right of his counsel to freedom of counsel's own religious

expression under the First Amendment. *Barrows vs. Jackson*, 346 U.S. 249, 256 (1953)

(Prudential limitations on standing dictate that even litigants who have established a substantial

injury from government action "cannot challenge its constitutionality unless [they] can show that

[they are] within the class whose constitutional rights are allegedly infringed.")  In other words,

"ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of

some third-party." *Barrows* 346 U.S. at 255. *See also*, *United States v. Raines*, 362 U.S. 17, 22

(1960).  The primary exception to this well-known, legal principle exists only where the party

who asserts the constitutional right has a close relationship with the person who possesses the

right, and the possessor of the right was hindered in his ability to protect his own interests.

*Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).  Because nothing has been shown that would

have precluded attorney Ricketts from pursuing enforcement of his own First Amendment right

to freedom of religion, Edmonds may not attempt to do so vicariously as a basis on which to

obtain § 2254 relief.  *See Spokeo, Inc v. Robins,___ U.S.___, 136 S.Ct. 1540, 1547 (2016)(" Our

cases have established that the "irreducible constitutional minimum" of standing consists of three

elements. *Lujan*, 504 U.S., at 560, 112 S.Ct. 2130. The plaintiff must have (1) suffered an injury

in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely

to be redressed by a favorable judicial decision.").

Edmonds' First Amendment argument in ground 5 fails in yet another significant respect. He cannot show that his conviction is fairly traceable to the challenged action – – the refusal of the trial court to permit his counsel to compare Edmonds to Jesus Christ on the crucifix – – so that even if Edmonds were asserting his own personal First Amendment right to freedom of religious expression, which he is not, the alleged denial of that right has not been shown by Edmonds to have had a substantial and injurious effect on his robbery, sodomy and murder convictions.  Such a comparison in closing argument, had the trial court allowed Edmonds' attorney to go forward with the crucifixion analogy, would have had absolutely no beneficial effect for Edmonds on the ultimate outcome of the criminal proceedings.

In other words, nothing was to be gained for the defense by comparing Edmonds to Jesus Christ, a particularly inapt, self-defeating comparison when one considers the nature of the facts of conviction.  It was Clifton Agnew who, similar to Jesus Christ, was an innocent man who was attacked, beaten, dragged helpless through the streets, stabbed and left for dead after being impaled on a wooden stake.  In this respect, Agnew's nightmarish experience on April 6, 2004 was clearly a far better comparison to the historic biblical account of Christ's crucifixion[93] than anything that happened to Edmonds due to his proven involvement in the charged offenses.  Had Edmonds' attorney been permitted to continue in closing argument with the analogy of his client's situation to the crucifixion of Jesus Christ, it is reasonable to conclude that the jury inevitably would have been deeply offended.  Accordingly, far from violating Edmonds' 1st or 6th Amendment rights, the trial court appropriately exercised its broad discretion over closing argument under *Herring* to Edmonds' actual benefit in order to head off what would have been the equivalent of a self-inflicted, and perhaps mortal, wound given that Edmonds was facing a possible death penalty.

---

[93] *See* Matthew 27:32-56 (NIV), Luke 23:26-43 (NIV) and John 19 (NIV).

Edmonds consequently is not entitled to habeas corpus relief on ground 5 of his petition where the decision of the Kentucky Supreme Ct. reasonably applied the controlling precedent of *Herring* albeit *sub silentio* to reject Edmonds' constitutional arguments relating to the guilt phase closing argument of his trial counsel.

**Ground 6:  Denial of Hall's Psychiatric Records**

Edmonds in ground 6 of his brief on direct appeal argued that his right to compulsory process was denied him when the trial court refused to grant his pre-trial motion to obtain Defendant Hall's complete psychiatric records and to submit Hall to an independent psychiatric examination.[94]  Edmonds argued on appeal that he should have been granted full access to Hall's mental health records given that Hall was a crucial prosecution witness and that those same records contained information directly related to Hall's ability to recall, comprehend and accurately relate his testimony to the jury.

Edmonds contended before the Kentucky Supreme Court that his case raised the question left unanswered in *Pennsylvania v. Ritchie*, 480 U.S. 39, 56-58 (1987) in which the U.S. Supreme Court had held that a criminal defendant has a due process right to discover exculpatory evidence contained in state-held records protected by a qualified privilege.  Edmonds argued that this due process right should be interpreted to apply with equal force to records otherwise protected by an absolute privilege, such as the psychotherapist-patient privilege, which are in the possession of the state as the records were in *Ritchie*.[95]  In doing so, he cited *Commonwealth v. Barroso*, 122 S.W.3d 554 (Ky. 2003) to argue that Hall's juvenile diagnosis of major depression 5-to-10 years prior to the charged offenses, combined with Hall's prior attempts at suicide during the same time period, constituted sufficient evidence to support a reasonable belief that his

---

[94] (DN 15, Appx 227-231, Appellant's Brief at pp. 35-39).
[95] (DN 1, Habeas Corpus Petition at pp. 21-23).

undisclosed mental health and psychiatric records contained evidence directly related to his ability to recall, comprehend and accurately relate critical facts.  Edmonds concluded that, at a bare minimum, such circumstances, the same that were present in the *Barroso* decision*,* required that the trial court in his case similarly conduct an *in camera* review of Hall's full psychiatric records, an event which did not occur where the trial court in Edmonds' case reviewed only Hall's juvenile mental health records.

The Supreme Court of Kentucky addressed this issue in section B.2 of its decision on direct appeal.  *Edmonds v. Commonwealth*, 2009 WL 4263142 at *10.  While the Supreme Court acknowledged that *Barroso* reflects the majority rule-- that a criminal defendant is entitled to some form of pretrial discovery of a prosecution witness's mental health treatment records upon a preliminary showing that the records likely contained exculpatory evidence—it held that *in camera* review of a witness's psychotherapy records "is authorized only upon receipt of evidence sufficient to establish a reasonable belief that the records contain exculpatory evidence." *Barroso*, 122 S.W.3d at 561 ("citing *Bowman Dairy Co. v. United States,* 341 U.S. 214, 221 (1951)).  The Kentucky Supreme Court then continued to explain that:

> After examining Hall's juvenile records *in camera*—which contained some of his psychiatric records that were five to ten years old—the trial judge found that an *in camera* review of the rest of his records was not warranted. The judge specifically found that the information in Hall's juvenile file from years before the current case was not sufficient evidence under *Barroso* to establish the required reasonable belief that the records contain exculpatory evidence.

> *11 A person's credibility is not in question merely because he or she is receiving treatment for a mental health problem. To subject every witness in a criminal prosecution to an *in camera* review of their psychotherapist's records would be the invasion of privacy which the psychotherapist-privilege is intended to prevent.

> *Id*. at 563 (quotation marks and citations omitted). Under these circumstances, the trial judge did not abuse her discretion.

*Edmonds v. Commonwealth*, 2009 WL 4263142 at *10-11.  The Kentucky Supreme Court held

for the same reasons that the trial court also did not abuse its discretion in refusing to order an

independent psychiatric examination of Hall pursuant to CR 35.01.  *Id.*

Edmonds now argues in his petition that he presented more than sufficient evidence in the

form of Hall's juvenile mental health records for the trial court to conclude that Hall's mental

condition was incompatible with his responsibilities as a trial witness. Consequently, "it was an

abuse of discretion for the [trial] court to disregard the good cause shown, and it was reversible

error to refuse to allow him to have Hall independently examined regarding his competency as a

witness."[96] Citing both *Ritchie* and *Barroso*, Edmonds concludes that his rights to due process,

compulsory process, and confrontation under the 6th and 14th Amendments to the U.S.

Constitution were violated where the mental health history of the witness in his case was

identical to the witness in *Barroso* so that the trial court should have obtained the remaining

psychiatric records of Hall to determine whether such complete records called into question

Hall's ability to recall, comprehend and accurately testify at trial.

These arguments reflect a profound misunderstanding of the highly limited nature of

habeas corpus relief.  As *Harrington* explains, our role is severely restricted. *Harrington v.*

*Richter,* 562 U.S. 86 (2011). We sit only to determine, as to those constitutional issues

considered by the state courts on their merits, whether the ultimate determination of the state

court can reasonably be argued to be in accord with the then-existing precedent of the U.S.

Supreme Court.  Our role is not to consider, much less resolve, admitted arguments by a state

prisoner for expansion of the clearly established precedent of the Supreme Court. *See, Lopez v.*

*Smith*, ___U.S.___, 135 S.Ct. 1, 4, 190 L.Ed.2d 1(2014)(absent an existing U.S. Supreme Court

decision that considers the petitioner's specific constitutional question, a federal habeas court

---

[96] (DN 1, Habeas Corpus Petition at pp 21-23).

may not reject the state court's resolution of the same claim). *See also*, *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (per curiam)(same).  Edmonds concedes that his arguments for habeas corpus relief in ground 6 of his petition rely upon answering the question left unresolved by *Ritchie*.  Such a concession is fatal to his argument.

The clearly established "rule" of *Ritchie* is that, given a qualified privilege statute such as the Pennsylvania statute at issue therein, a criminal defendant is "entitled to have a [government-held] file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of [the defendant's] trial," but only if the defendant has "established a basis for his claim that it contains material evidence," by making "some plausible showing of how [the] testimony would have been both material and favorable to [the] defense." *Ritchie*, 480 U.S. at 58 n. 15. *See Renusch v. Berghuis*, 75 Fed. Appx 415, 423 (6th Cir. Sept. 12, 2003) (discussing the clearly established rule of *Ritchie*); *Isaac v. Grider*, 211 F.3d 1269, 2000 WL 571959 at *7 (6th Cir. May 4, 2000) (discussing the confrontation clause aspects of *Ritchie*).

Here, the trial court properly determined, according to the Kentucky Supreme Court, that Edmonds had failed to make this required showing to obtain further review of Hall's remaining mental health records after the trial court reviewed the juvenile records *in camera*.  Edmonds' current claims that the trial court abused its discretion in this respect under the state court decision in *Barroso*, or that *Ritchie* should be expanded to include those records otherwise protected by an absolute privilege as opposed to a qualified one, are not ones that are cognizable as a basis for § 2254 relief.  *Ritchie* and the confrontation clause afford a criminal defendant no constitutional right to examine privileged records held by the state merely to engage in an unrestricted search for otherwise unknown facts. *See Browning v. Meko*, No. 09–423–GFVT, 2013 WL 1311423 at *2 (E.D. Ky. Mar 23, 2013) (same); *Bowling v. Parker*, No. 03–28–ART,

2012 WL 2415167 at *34 (E.D. Ky June 26, 2012) (same).  Accordingly, Edmonds is not entitled to habeas corpus relief on this ground.

**Ground 7:  Competency to Stand Trial**

Edmonds continues in ground 7 of his petition to argue that his 6th and 14th Amendment rights to due process were violated when the state trial court failed to find him incompetent to stand trial and allegedly instructed defense counsel that Edmonds "could not testify in his own defense."[97] Edmonds argues that the hearing testimony of Dr. Peter Schilling, a Lexington clinical psychologist, was improperly rejected by the trial court in finding Edmonds to be competent based on the testimony of Dr. Steven Simon, who unlike Dr. Schilling, did not personally administer Edmonds' psychological testing.  Because Dr. Simon also supposedly did not take into account Edmonds' deficiencies in adaptive behavior as measured by the Vineland Adaptive Behavior Test, as did Dr. Schilling, Edmonds insists that the trial court violated his due process rights when it credited the testimony of Dr. Simon over that of Dr. Schilling.

As noted, Edmonds initially filed a motion for a competency hearing on January 25, 2006 based on the psychological evaluation obtained by Dr. Schilling, who found Edmonds incompetent to stand trial.[98] The trial court as a result ordered that Edmonds be evaluated at KCPC, where Dr. Simon evaluated him.[99] Edmonds in April of the same year also filed a motion to exclude the death penalty as a potential punishment due to his alleged mental retardation.[100] Following an evidentiary hearing held 31, 2006, at which both experts testified, the trial court

---

[97] (DN 1, Petition at pp.24-26).  Nowhere in the state court briefs on appeal do we find any mention of this latter claim that the trial court advised Edmonds' counsel that Edmonds could not testify in his own defense. This court is the first occasion on which such an unusual claim has been broached. Accordingly, the claim is procedurally defaulted given the clear failure of Edmonds to fully and fairly raise it in the Kentucky courts or to show cause and prejudice for his failure to do so.
[98] (DN 15, Appx 45-46, Motion for Competency Hearing; 51-75, 78-114, Report of Dr. Schilling).
[99] (DN 15, Appx 47, Order for Evaluation).
[100] (DN 15, Appx 76, Motion; 116-123, Memorandum in Support).

found Edmonds to be competent to stand trial where the trial court concluded that he had the present ability to understand the nature of the charges against him and to assist in the preparation of his defense at trial.  The trial court also ruled that Edmonds' various full scale IQ scores of above 70 persuaded it that he had failed to establish by a preponderance of the evidence that he met the statutory criteria of significantly sub average intellectual functioning for mental retardation so as to be ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002).[101]

On direct appeal, Edmonds argued to the Kentucky Supreme Court that only Dr. Schilling, rather than Dr. Simon, properly evaluated all 12 subsets of the WAIS III test for IQ measurement, which revealed a verbal IQ sub score of 68 indicative of mental retardation.  Dr. Schilling testified at the hearing that a psychologist cannot do a proper evaluation for mental retardation based merely on the WAIS III full-scale IQ score alone, but also must consider the adaptive behavior abilities of the subject before reaching any conclusions on whether such individual is mentally retarded.[102]  Because Edmonds received only a 53 overall score on the Vineland test for adaptive behavior, and Dr. Simon did not administer the Vineland test, Edmonds concluded that the trial court erred in placing more weight upon the testimony of Dr. Simon as opposed to that of Dr. Schilling, who not only found Edmonds to be mentally retarded, but also incompetent to stand trial due to his insufficient ability to understand words, participate, provide feedback and express his opinion.[103]

While Dr. Simon did find indication of malingering by Edmonds based on his extraordinarily low results on the TOMM test, a test ordinarily administered to brain-injured test subjects, Edmonds maintained on direct appeal that the lack of rapport between Dr. Simon and

---

[101] (DN 15, Appx 124-125, Order Denying Motion to Exclude Death Penalty).
[102] (DN 15, Appx 231-242, Brief for Appellant at pp. 39-50).
[103] Id.

himself resulted in his extraordinarily low TOMM scores of 21, as opposed to the significantly higher scores of 35 and 38 that he obtained when Dr. Schilling earlier administered the same TOMM testing to him.  Accordingly, Edmonds insisted on appeal that his proof through Dr. Schilling was sufficient when adequately considered to meet the preponderance of the evidence standard to establish both his incompetency to stand trial and the unavailability of the death penalty due to his retardation-- disputed evidence of malingering notwithstanding.  To the extent that the trial court relied upon his full-scale IQ test score results of above 70 to reject Edmonds' claim of mental retardation, he argued on appeal that such reliance of the trial court on *Bowling v. Commonwealth*, 163 SW.3d 361 (Ky. 2005), and its bright-line test requiring an IQ score of 70 or below, violated the holding of *Atkins, supra.*

In part B.3 of its opinion on direct appeal, the Supreme Court of Kentucky rejected Edmonds' various arguments on their merits, holding that:

> Edmonds also claims that he should have been found incompetent to stand trial and found to be mentally retarded so as to exclude the possibility of the death penalty. Before the trial in this case, the trial court conducted a competency hearing. Dr. Peter Schilling testified for the defense and Dr. Steven Simon testified after conducting a competency evaluation at the Kentucky Correctional Psychiatric Center ("KCPC") at the court's request.

> Dr. Schilling conceded that Edmonds recorded a full-scale I.Q. score of 71 on the test he administered, and that he had previously scored 71 and 73. He also conceded that Edmonds achieved scores indicative of malingering.

> Dr. Simon testified that Edmonds scored 66 on the test administered at KCPC but that he once again achieved scores indicative of malingering.

> "RCr 8.06 and KRS 504.100 set out the legal duty to order a competency hearing once reasonable grounds are presented which call competency into question." Alley v. Commonwealth, 160 S.W.3d 736, 739 (Ky.2005). The trial judge did this. At this hearing, however, "[t]he burden is on the defense to prove a defendant incompetent by a preponderance of the evidence." *Id*. "In Kentucky, the standard of competency is whether the defendant has a substantial capacity to comprehend the nature and consequences of the proceedings against him and to

participate rationally in his defense." *Id.*; see also KRS 504.060. The trial judge
noted this standard in reaching her decision.
"The mere fact that the trial judge accepted the testimony of one of the doctors as
more credible than the other, has been found to be permissible and allows the
judge to make a finding regarding competency." *Alley*, 160 S.W.3d at 739. The
situation here is on point with *Alley*, where

> the trial judge had the authority to accept the medical evidence that
> he believed was most credible and convincing. He made extensive
> findings of fact with regard to the evidence and determined that
> Alley had failed to provide sufficient evidence to demonstrate that
> he was incompetent to stand trial in light of the evidence to the
> contrary. Our review of the record indicates that the decision of the
> trial judge was supported by substantial evidence and was not
> clearly erroneous.

*12 *Id*. Here, the trial judge weighed the two evaluations and found that Edmonds
had been malingering. She did not abuse her discretion by finding him competent
to stand trial at that time.  Additionally, Edmonds argues he should have been
found mentally retarded and thus been exempt from the death penalty under
*Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and
KRS 532.140. Because Edmonds did not receive the death penalty, this issue is
moot.

*Edmonds v. Com.*, No. 2007-SC-000350-MR, 2009 WL 4263142, at *11–12 (Ky. Dec. 1, 2009).

Edmonds now offers us no explanation how the above resolution of his claim was

contrary to or an unreasonable application of the well-established controlling precedent of the

U.S. Supreme Court.  The Warden in his Response correctly points out that the controlling

constitutional standard is established in *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975).  In

*Drope,* the Supreme Court approved a test for incompetence that asked whether a criminal

defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of

rational understanding – – and whether he has a rational as well as factual understanding of the

proceedings against him."  *Id.* (quoting *Dusky v. United States*, 362 U.S. 402 (1960)).  *See also*,

*Medina v. California*, 505 U.S. 437, 439 (1992) ("It is well-established that the Due Process

Clause of the 14th Amendment prohibits the criminal prosecution of a defendant who is not

competent to stand trial."); *Lennox v. Goodrich*, No 1:12-CV-1017, 2013 WL 5874746 at *20-

47

21 (N.D. Ohio Oct. 30, 2013) ("The standard for competence to stand trial is whether the defendant has (1) sufficient present ability to consult with a lawyer with a reasonable degree of rational understanding, and (2) a rational and factual understanding of the proceedings against him.") (quoting *Franklin v. Bradshaw*, 695 F.3d 438, 447(6thCir. 2013)).

The Supreme Court of Kentucky concluded that the trial court appropriately found Edmonds competent to stand trial. A state-court determination of competence is considered to be a finding of fact to which the federal courts will defer on habeas corpus review absent a showing by the petitioner that such finding is clearly erroneous. *Thompson v. Keohane*, 516 U.S. 99, 110-11 (1995); *Mackey v. Dutton*, 217 F.3d 399, 413 (2000)("§2254(d)'s presumption of correctness applies to a trial court's competency determination."). Edmonds has not presented any clear and convincing evidence that would call into question the finding of his competency by the trial court. *See, Gibson v. Bell*, No. 09–cv–12395, 2010 WL 3582648 at *6 (E.D. Mich. Sept. 10, 2010)(factual determination of criminal defendant's competency to stand trial was entitled to absolute deference absent clear and convincing evidence rebutting same.).

Indeed, he has not even identified in his petition which clearly established precedent of the U.S. Supreme Court was unreasonably applied, or is contrary to, the state court decision on direct appeal as required by 28 U.S.C. § 2254(d)(1) in order to obtain relief. Once again, he appears content simply to echo the same arguments that his counsel raised on direct appeal of his conviction. Such a strategy is futile in the context of a habeas corpus proceeding where he must establish that fair-minded jurists could not reasonably debate that the decision of the Supreme Court of Kentucky was contrary to or an unreasonable application of the clearly established precedent of the U.S. Supreme Court. Edmonds has not remotely satisfied this stringent standard as to ground 7 of his petition and therefore is not entitled to § 2254 relief.

48

**Ground 8:[104]  Ineffective Assistance of Counsel**

Edmonds argues in his final ground for relief that he "received ineffective assistance of counsel during every critical stage of [his] criminal proceedings."[105] More specifically, he faults his trial counsel for failing to file a motion for a new trial pursuant to RCr 10.06.  He protests that his appellate counsel on direct appeal did not raise nor argue any claims of ineffective assistance of trial counsel.  The first occasion on which Edmonds raised claims of ineffective assistance of counsel occurred on June 20, 2010 when he filed his pro se RCr 11.42 motion to vacate along with a later pro se supplemental motion filed on November 20, 2012.[106]

The trial court upon completion of briefing entered an order on August 2, 2013 that rejected Edmonds' claims of ineffective assistance of counsel based on the standard announced in *Strickland v. Washington,* 466 U.S. 668 (1984).  In doing so, the trial court rejected Edmonds' argument that his trial counsel should have filed a motion to sever Edmonds' trial from that of co-defendant Hall.  Because Hall had already unsuccessfully moved to sever his own trial from that of Edmonds, the trial court concluded that any such motion by Edmonds' counsel would have been futile, as "Defendant would have endured the same result if he subsequently filed a similar motion."[107]

The trial court next concluded that Edmonds' generic assertion that his trial counsel had "failed to research and understand the law as it pertained to the charges against him" was devoid

---

[104] Edmonds does not formally number his various claims of ineffective assistance of counsel as being "ground 8" of his petition. For the sake of organizational clarity, we have assigned these 6th Amendment claims such designation.
[105] (DN 1, Petition at p.  27).
[106] As Edmonds correctly notes in his petition, the trial court initially appointed the Kentucky Department of Public Advocacy (DPA) to represent Edmonds, but the DPA counsel withdrew with the permission of the trial court after counsel determined that a reasonable, non-indigent defendant would not have brought the same preceding at his own expense. See, KRS § 31.110(2)(c)  (DN 15, Appx.  424-425, 428, Order Appointing Counsel; Motion to Withdraw; Order Granting Motion to Withdraw).
[107] (DN 15, Appx 443, Order denying Motion to Vacate at p. 2).

of specific facts or information and therefore failed.  Finally, the trial court also rejected

Edmonds' claim that his trial attorneys improperly failed to object to him being tried on the

charged offenses based on the prior guilty plea of his codefendant, Dwayne Edmonds, where all

defendants were charged with acting in complicity with one another.

Edmonds filed a pro se appeal to the Kentucky Court of Appeals[108] where he attempted to

raise for the first time three new grounds of ineffective assistance of counsel that were not raised

below.  After setting out the *Strickland* standard for claims of ineffective assistance of counsel,

the Kentucky Court of Appeals held that three of the four claims of ineffective assistance raised

by Edmonds were unpreserved for appellate review because Edmonds did not raise them in his

RCr 11.42 motion in the trial court.  Specifically, the Court of Appeals held that:

> As stated previously, three of Edmonds' four claims fail as being unpreserved;
> meaning Edmonds did not raise them in his RCr 11.42 motion filed with the trial
> court. *See Bowling v. Commonwealth*, 80 S.W.3d 405, 419 (Ky. 2002) (a specific
> claim of ineffective assistance of counsel which was not raised in the movant's
> RCr 11.42 motion will not be considered on appeal). These include his claims that
> trial counsel rendered ineffective assistance by failing to object to a witness's
> (Kaye James)[109] trial testimony, failing to argue that a witness's (Larry Mulligan)
> signature on two photo arrays did not match, and failing to challenge the murder
> count on double jeopardy grounds. Since he failed to present these claims to the
> trial court for consideration, Edmonds is procedurally barred from asserting them
> now.

*Edmonds v. Commonwealth*, No. 2013-CA-001467-MR, 2015 WL 865440, at *2 (Ky. Ct. App.

Feb. 27, 2015).  The Kentucky Court of Appeals then proceeded to address Edmonds' fourth

claim of ineffective assistance of trial counsel, the only claim not procedurally barred – – that his

trial counsel should have moved for separate trials.  As with the trial court, the Kentucky Court

of Appeals held that the performance of an attorney cannot be considered to be deficient under

---

[108] Once again, the DPA was appointed to represent Edmonds on appeal, but the DPA attorney successfully moved
to withdraw pursuant to KRS § 31.110(2)(c) based on his conclusion that a reasonable, non-indigent defendant
would not have taken an appeal at his own expense.
[109]  The reference to "Kaye James" by the Kentucky Court of Appeals is, in fact, a reference to Kaye Thomas.

*Strickland* for failure to file an otherwise futile motion. *Id.* Edmonds' subsequent motion for discretionary review of this decision of the Kentucky Court of Appeals opinion was denied by the Supreme Court of Kentucky on Oct. 21, 2015.[110]

In addition to the claims of ineffective assistance of counsel mentioned above, Edmonds in his petition has listed a series of additional alleged failures of trial and appellate counsel on page 28 of his petition. The critical question now is whether the federal courts may reach the merits of any of these additional claims of ineffective assistance of counsel beyond the sole Sixth Amendment claim considered on its merits on post-conviction appeal. This question requires that the Court briefly discuss the law as it relates to procedural default in habeas corpus proceedings. Only if his defaulted claims of ineffective assistance of counsel can be properly put before the federal courts on their merits will Edmonds be able to obtain substantive consideration of any of them.

### 1. The Procedural Default Doctrine

The doctrine of procedural default rests on considerations of comity and federalism. *See, Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997) (citing *Lambrix v. Singletary*, 520 U.S. 518, 522-23 (1997)). It provides in essence that the federal courts "will not reach a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Beard v. Kindler,* 558 U.S. 53, 55 (2009)( citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Peoples v. Lafler,* 734 F.3d 503, 510 (6th Cir. 2013)("When a state prisoner "procedurally defaults" a claim for habeas relief, meaning the prisoner lost the claim in state court by failing to raise it at the correct time, we defer to the state's procedural ruling and refuse to consider the claim on the merits")(citing *Wainwright v. Sykes,* 433 U.S. at 86-87) . An "independent and adequate state

---

[110] (DN 15, Appx 516, Order Denying Discretionary Review)

ground" will bar consideration of those federal claims in a federal habeas corpus proceeding that have been defaulted under state law, unless the default is excused. *Coleman*, 501 U.S. at 729-30; *Brown v. Allen*, 344 U.S. 443, 486-87 (1953). *See*; *Ake v. Oklahoma,* 470 U.S. 68, 74-75 (1985)(discussing whether a state procedural default ruling is 'independent."); *Lee v. Kemna,* 534 U.S. 362, 376-377 (2002))(discussing whether a state procedural ruling is "adequate."). *Johnson v. Mississippi,* 486 U.S. 578, 587 (1988)(same).

A federal claim brought by a state prisoner in a habeas action may become procedurally defaulted in state court in several different ways. *See, Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). A prisoner first may procedurally default a given claim by failing to comply with an established state procedural rule when presenting his claim at trial or on appeal in the state courts. *See, Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (Florida petitioner who failed to timely challenge his confession at trial as required by Florida rules of criminal procedure procedurally defaulted his *Miranda* claim absent a showing of "cause" and "prejudice.").

If the state courts unambiguously rely on the prisoner's procedural failure as a basis to refuse to address the merits of the same prisoner's constitutional issue, which admittedly may be sometimes difficult to determine; *and*, the state procedural rule involved is an adequate and independent ground on which to preclude relief, then the federal courts will hold the prisoner's habeas claim to be procedurally defaulted. *See, Harris v. Reed,* 489 U.S. 255, 261 (1989)(if "'it fairly appears that the state court rested its decisions primarily on federal law' this Court may reach the federal question on review unless the state court's opinion contains a 'plain statement' that [its] decision rests upon adequate and independent state grounds.")(quoting *Michigan v. Long,* 463 U.S. 1032, 1042 (1983); *Williams*, 460 F.3d at 806 (*citing Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). This "plain statement" rule, reduced to its essence, provides that "a

procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris,* 489 U.S. at 263(citing *Caldwell v. Mississippi,* 472 U.S. 320, 327 (1985)).

In applying this rule, we look to the last reasoned state judgment to determine its basis. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991)(If "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."). Merely because such a reasoned state court decision goes on to discuss, in the alternative, the merits of a claim that it otherwise has held to be barred based on an adequate and independent procedural ground, however, does not remove the procedural default. *See Baze,* 371 F.3d at 319(citing *Clifford v. Chandler,* 333 F.3d 724, 728-29 (6th Cir. 2003), *overruled in part on other grounds, Wiggins v. Smith*, 539 U.S. 510 (2003)).

The federal courts consequently will not reach the merits of the procedurally defaulted claim rejected on adequate and independent state law grounds, unless the Petitioner is able to demonstrate cause for the default and prejudice resulting therefrom, or alternatively, that manifest injustice will result from the conviction of one who is factually innocent if the claim is not addressed. *Sutton v. Carpenter,* 745 F.3d 787, 790-91 (6th Cir. 2014); *Henderson v Palmer,* 730 F.3d 554, 559 (6th Cir. 2013)("'[a] petitioner may avoid this procedural default [ ] by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case.'")(citing *Seymour v. Walker,* 224 F.3d 542, 550 (6th Cir. 2000)) *See gen, House v. Bell,* 547 U.S. 518, 536-37 (2006)(discussing innocence as a gateway to defaulted claims)..

53

The Sixth Circuit will apply the 4-prong test first announced in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) to determine when a procedurally defaulted claim may receive federal review.  The Sixth Circuit in *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001) explained the *Maupin* test as follows:

> This court's *Maupin* decision sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure to observe a state procedural rule.  First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Maupin*, 785 F.2d at 138.  Second, the court must decide whether the state courts actually enforced its procedural sanction. *Id*. Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim.  "This question will usually involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Id*. And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*; see also *Scott v. Mitchell*, 209 F.3d 854, 864 (6th Cir.), cert. denied, 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000).

*Id.  See also, Peoples v. Lafler,* 734 F.3d 503, 510-11 (6th Cir. 2013)(discussing the four elements of the procedural default doctrine)(citing *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(en banc).  *See gen*, *Bowling v. Parker*, 344 F.3d 487, 498-99 (6th Cir. 2003), *cert denied*, 543 U.S. 842 (2004) (discussing *Maupin*).

The second manner in which a state prisoner may procedurally default a claim is by failing to raise the claim in the state court, or to pursue the same claim through the state's "ordinary appellate review procedures." *Id.* (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-49 (1999)).  Any such claim will be held to be procedurally defaulted if, at the time the prisoner's habeas petition is filed, state law does not permit the prisoner to further pursue the claim. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Engle v. Issac*, 456 U.S. 107, 125 n. 28

(1982).  In such instances, the problem with the claim is one of procedural default, not failure to

exhaust available state remedies.  *See gen, Gray v. Netherland,* 518 U.S. 152, 162-63

(1996)(discussing the full and fair presentation requirements of the exhaustion doctrine); *Castille*

*v. Peoples*, 489 U.S. 346, 351(1989)(same); *Engle v. Isaac,* 456 U.S. 107, 125 (1982);  *Picard v.*

*Connor,* 404 U.S. 270 (1971)(claim must include reference to specific federal constitutional right

and statement of facts entitling petitioner to relief).

As *Williams* explains, the two concepts, exhaustion and procedural default, are frequently

confused, yet are distinct concepts.  *Williams*, 460 F.3d at 806.  The requirement of exhaustion

relates only to those state remedies that remain available at the time the federal habeas petition is

filed.  *Engle*, 456 U.S. at 125 n. 28.  If no state remedies remain available because a state

prisoner failed to pursue them within the time allotted by state law, then procedural default will

bar federal court review-- not a failure to exhaust available remedies since none remain

available.  *Id*.

Several important qualifications must be added when one discusses procedural default in

either of its variations.  First, neither the exhaustion doctrine nor procedural default are

jurisdictional limitations on the federal courts. *See Pudelski v. Wilson,* 576 F.3d 595, 605-606

(6th Cir. 2009)(citing *Cain v. Redman,* 947 F.2d 817, 820 (6th cir. 1991)).  In other words,

exhaustion and procedural default may be waived, *Baze v. Parker,* 371 F.3d 310, 320 (6th Cir.

2004), *cert denied,* 544 U.S. 391 (2005)("The state may waive the defense by not asserting

it.")(citing *Scott v. Collins,* 286 F.3d 923, 927-28(6th Cir. 2002)), or even in the case of

procedural default, simply be ignored by the federal courts when to do so would not affect the

resolution of the outcome and would simplify the analysis of a petitioner's § 2254 claims.  *See*

*Babick v. Berghuis,* 620 F.3d 571, 576 (6th Cir. 2010)("We cut to the merits here, since the

55

cause- and-prejudice analysis adds nothing but complexity to the case.")(citing *Hudson v. Jones,* 351 F.3d 292 215 (6th Cir. 2003).

Second, the state procedural default, whether it occurs in either fashion discussed above, may be avoided by the petitioner only if he or she is able to make the aforementioned showing of cause and prejudice, or more rarely, manifest injustice. *See, Edwards v. Carpenter,* 529 U.S. 446, 451 (2000)(cause and prejudice standard apply "whether the default in question occurred at trial, on appeal or on state collateral attack.").  The first requirement, "cause" originates from *Davis v. United States,* 411 U.S. 233, 236 (1973) and was applied to § 2254 petitioners in *Francis v. Henderson,* 425 U.S. 536 (1976).  *Reed v. Ross,* 468 U.S. 1, 14 (1984).

A showing of cause ordinarily requires that the petitioner demonstrate that some event external to the defense prevented the state prisoner from complying with the affected state procedure. *See Maples v. Thomas,* 565 U.S. 266, 280 (2012)(""Cause for a procedural default exists where 'something external to the petitioner, something that cannot fairly be attributed to him …'impeded [his] efforts to comply with the State's procedural rule.'")(quoting *Coleman v. Thompson,* 501 U.S. 722,753 (1991)).  *See gen., Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, 133 S.Ct. 311 (2012)(discussing the external factors that may constitute cause).  Attorney error, when it rises to the level of ineffective assistance of counsel in violation of the Sixth Amendment, may also satisfy the cause requirement. *See Murray v. Carrier*, 477 U.S. at 488-89("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington,*[466 U.S. 668…(1984)], we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").  Mere ignorance or inadvertent attorney error of itself will not be sufficient to establish cause unless constitutionally inadequate.  *Murray v. Carrier,* 477 U.S.

at 486-87(citing *Engle,* 456 U.S. at 133-34). *See gen., Jones v. Bagley*, 696 F.3d 475, 484 (6th Cir. 2012), *cert. den'd*, 134 S.Ct. 62 (2013)( Ineffective assistance of counsel is considered to be "the legal theory most commonly used to attempt to circumvent the procedural default rule.").

An attorney's abandonment of his client, as evidenced by a near total failure to communicate or to respond to the petitioner's inquiries of a period of years, also may constitute cause for a procedural default where the attorney has severed the principal-agent relationship. *Maples,* 132 S.Ct. at 922-23 ("We agree that, under agency principles, a client cannot be charged with the acts of omissions of an attorney who has abandoned him."). *See, Holland v. Florida,* 560 U.S. 631, 659 (2010)("Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense.")(Alito, J., concurring).

Further, a claim of ineffective assistance of counsel that a petitioner hopes to rely on to establish cause must itself be exhausted by full and fair presentation at all applicable levels of the state courts before the petitioner may rely on it in his habeas corpus proceeding in an effort to avoid the procedural default. *Murray v Carrier,* 477 U.S. at 489("[W]e think that the exhaustion doctrine, which is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."). *See also, Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000)(ineffective assistance to establish cause is itself an independent constitutional claim that like all others must be raised and exhausted in state court)(citing *Stewart v. LaGrand,* 526 U.S. 115, 120 (1999)).

Prejudice, the second half of the cause and prejudice test, requires that a petitioner who has procedurally defaulted a potential federal claim show actual prejudice. *Francis v. Henderson,* 425 U.S. 536 (1976)(citing *Davis,* 411 U.S. at 245)(discussing the *Henderson-Davis* rule). Actual prejudice in this context is such prejudice as to establish a reasonable probability that the outcome of the judicial proceedings would have been different.  *See, Jamison v. Collins,* 291 F.3d 380, 388 (6th Cir. 2002)("Prejudice, for purposes of procedural default analysis, requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions.")(quoting *United States v. Frady,* 456 U.S. 152, 170-71 (1982).See *Harbison v. Bell*, 408 F.3d 823, 834 (6th Cir. 2005)(actual prejudice sufficient to excuse procedural default requires " a reasonable probability that the result of the trial would have been different."); *Mason v. Mitchell,* 320 F.3d 604, 629 (6th Cir. 2003)(" To obtain relief, Mason "must convince us that 'there is a reasonable probability' that the result of the trial would have been different….").

Until recently, the alleged ineffective assistance of counsel in an initial state post-conviction proceeding could not serve to establish cause for a procedural default because no federal constitutional right to the assistance of counsel exists in such a proceeding. *See, Coleman,* 501 U.S. at 755; *Wallace v. Sexton,* 2014 WL 2782009 at *10-12 (6th Cir. June 2014)("Generally, an attorney's ineffective assistance in post-conviction proceedings does not qualify as "cause" to excuse procedural default of his constitutional claims.").  In 2012, however, the U.S. Supreme Court carved out a limited, equitable exception for claims of ineffective assistance of trial counsel that could be raised for the first time only in an initial state post-conviction proceeding. *See Martinez v. Ryan,* 566 U.S.1, 13-14 (2012)("[w]here, under state law,

claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").

This limited exception was subsequently expanded by the Supreme Court in *Trevino v. Thaler*, ─── U.S. ───, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013). *See, Wallace,* 2014 WL 2782009 at * 12("In *Trevino*, the Supreme Court extended the *Martinez* rule to states whose procedural structure makes it "virtually impossible" for a defendant to present an ineffective-assistance claim on direct appeal, even if there is no outright requirement that a defendant refrain from doing so."); *Morris v. Parker,* 2014 WL 2956422 at * 10-11 (W. D. Tenn. June 30 2014)(discussing *Martinez* and *Trevino*).  Ineffective assistance of counsel in an initial post-conviction proceeding, however, remains restricted to otherwise procedurally defaulted claims of ineffective assistance of *trial* counsel, not ineffective assistance of appellate counsel.  *Morris v. Parker*, 2014 WL 2956422 at *11("The holding of *Martinez* does not encompass claims that post-conviction appellate counsel was ineffective."). *See also, Hodges,* 727 F.3d at 521(same). Further, *Martinez* did not announce a new rule of constitutional law, or any rule of constitutional law per se, that could be made applicable retroactively on collateral review to cases that became final prior to its rendition. *See, Chavez v. Secretary, Florida Dep't. of Corr.,* 742 F.3d 940, 945-46 (11th Cir. 2014)("*Martinez* did not announce a new rule of constitutional law. See 28 U.S.C. § 2244(d)(1)(C);*Arthur,* 739 F.3d at 629 ("The *Martinez* rule is not a constitutional rule but an equitable principle."). *See also Buenrostro v. United States*, 697 F.3d 1137, 1139 (9th Cir. 2012) (holding that *Martinez* "did not announce a new rule of constitutional law")").

## 2.   Cause and Prejudice

Examination of the record confirms that Edmonds has procedurally defaulted the vast majority of his claims of ineffective assistance of trial and appellate counsel by his failure to fully and fairly present such claims to the state trial and appellate courts.  The Kentucky Court of Appeals in *Edmonds v. Commonwealth*, No. 2013-CA-1467-MR, 2015 WL 865440 (Ky. App. Feb 27, 2015) plainly relied upon an adequate and independent state law ground to reject 3 of the 4 claims of ineffective assistance of counsel that Edmonds attempted to raise.

Citing *Bowling vs. Commonwealth*, 80 S.W.3d 405, 419 (Ky. 2002), the Kentucky Court of Appeals applied the time-tested rule in Kentucky that a claim of ineffective assistance of counsel which is not raised in a post-conviction motion pursuant to RCr 11.42 will not be considered by the state courts on appeal. *Edmonds,* 2015 WL 865440 at *2.  This rule is expressly set forth in RCr 11.42(3), which provides that a post-conviction motion shall "state all grounds for holding the sentence invalid of which the movant has knowledge."  *Id*.  The rule then immediately continues to add that "final disposition of the motion shall conclude all issues that could reasonably have been presented in the same proceeding."  *Id*.

The language of the Court of Appeals opinion leaves no doubt that it expressly relied upon the substance of this state rule of procedure to refuse to address the three defaulted 6th Amendment claims of ineffective assistance of counsel.  The fact that the Kentucky Court of Appeals chose to add in passing that the same defaulted claims were otherwise meritless does not erase that fact that it found all three claims to be procedurally defaulted due to Edmonds failure to bring them before the trial court by way of his RCr 11.42 motion.

Edmonds offers no meaningful showing of cause and prejudice that would excuse his procedural default in this regard.  At most, he seems to suggest in his "Traverse" that the

60

Kentucky Court of Appeals misapplied the *Strickland* standard due to its passing reference to *Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1986).[111]  Three insurmountable problems confront this argument.  First, the Kentucky Court of Appeals in its decision plainly applies the correct standard of *Strickland* when it states that:

> In order to prove ineffective assistance of counsel for purposes of RCr 11.42 relief, a movant must show: (1) that counsel's representation was deficient in that it fell below an objective standard of reasonableness, measured against prevailing professional norms; and (2) that he was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); adopted by *Gall v. Commonwealth*, 702 S.W.2d 37, 39 (Ky.1985). Judicial review of performance of defense counsel is deferential to counsel and a strong presumption exists that the conduct of counsel falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

*Edmonds v. Commonwealth*, 2015 WL 865440, at *2 (Ky. Ct. App. Feb. 27, 2015).  The material language of the above quote in fact is directly taken from *Strickland* itself.  At most, the decision indicates only that *Strickland* was adopted in 1985 by the Kentucky courts in *Gall*, which also is entirely correct.  This reference, however, is little more than a historical footnote in terms of its relationship to the substance of the Kentucky Court of Appeals opinion.

Second, the next problem is that Edmonds' argument – – that *Gall* improperly imposes a more stringent clear and convincing evidence standard of review in Kentucky for claims of ineffective assistance of counsel than the reasonable probability standard required by *Strickland* – – has been expressly rejected by the federal courts.  This exact argument was first raised and rejected in *Waford v. Mudd*, No. 3:04CV64JMD, 2005 WL 1712445 at * 10-11 (E.D. Ky . June 27, 2005), wherein the petitioner argued that:

> Apart from petitioner's arguments concerning the state court's determination of the facts, petitioner argues that the state courts' rejection of his ineffective assistance claims is not entitled to deference because the state courts unreasonably interpreted federal law. Specifically, petitioner argues that the Kentucky Court of

---

[111] (DN 17, Traverse at pp. 1-4).

Appeals misinterpreted *Strickland* as requiring clear and convincing proof that "but for" counsel's errors, the resulting verdict would have been different. Under *Strickland*, a petitioner need prove only a "reasonable probability" that, but for the errors, the result would have been different.

A review of the record and the cited case law makes clear that the Kentucky courts have appropriately understood and applied *Strickland*. In its opinion rejecting petitioner's ineffective assistance of counsel claims, the Kentucky Court of Appeals repeatedly cited to the *Strickland* standard requiring proof of a "reasonable probability" that the result would have been different. Contrary to petitioner's assertion, the court did not erroneously convert the *Strickland* "reasonable probability" standard to one requiring "clear and convincing" evidence that the outcome would have been different.

It is true that the Court of Appeals cited *Gall v. Commonwealth*, 702 S.W.2d 37 (Ky.1986); however, *Gall* itself appropriately applied *Strickland*. The only reference to any type of "convincing" standard made by the Kentucky Court of Appeals occurs within its discussion of Ky. RCr 11.42, not in a discussion of the burden of proof under *Strickland*. Quoting from another Kentucky case, the Court of Appeals explains that to be entitled to relief under RCr 11.42, a movant bears the burden "to establish convincingly that he was deprived of some substantial right which would justify the extraordinary relief afforded by the post-conviction proceeding." DE # 15, App. at 179 (citation omitted). In other words, although a petitioner must establish "convincingly" his or her entitlement to post-conviction relief under state law, a petitioner who relies on an ineffective assistance of counsel claim can make this "convincing" showing by satisfying the *Strickland* "reasonable probability" standard. In this case, the Court of Appeals concluded that the petitioner had not satisfied *Strickland* and therefore was not entitled to RCr 11.42 relief. The state courts' application of the standards applicable to ineffective assistance of counsel claims was not erroneous.

*Waford,* 2005 WL 1712445 at * 10. *See also, McClendon v. Taylor*, 2014 WL 6610299 at *4 (E.D. Ky. Nov. 19, 2014)(rejecting the same argument that the state trial court improperly applied a more stringent "clear and convincing evidence" standard of *Gall* rather than the reasonable probability standard of *Strickland*).  Thus, the argument on its merits has already failed in the federal courts of this district.

Third, and finally, even if the *Gall* argument had merit, which it does not, it would still be irrelevant to the question of cause and prejudice to excuse procedural default.  In other words, the question here is not whether the *Strickland* standard for claims of ineffective assistance of

counsel itself was correctly stated by the Kentucky Court of Appeals for the one 6th Amendment claim it elected to review on the merits in its opinion, which it certainly was. Rather, the question is whether Edmonds can adequately explain why he did not timely raise and pursue the remaining three claims of ineffective assistance of counsel that the Kentucky Court of Appeals refused to consider due to his clear procedural default. *Gall* in this regard is entirely unrelated to a showing of cause and prejudice. Edmonds has not shown cause and prejudice for any of the three procedurally defaulted claims of ineffective assistance of counsel that he attempted to initially raise in the Kentucky Court of Appeals, nor as to the additional ineffective assistance claims newly raised at page 28 of his petition in this Court.

The new claims of ineffective assistance of counsel appear at page 28 of the petition as a mere list of headings without any significant development of the facts or legal argument. In the absence of any specific factual allegations to support his claims of ineffective assistance such entirely generic and conclusory allegations fail to raise a meritorious Sixth Amendment claim. *See Wogenstahl v. Mitchell*, 68 F.3d 307, 335 (6th Cir. 2012) (general claims of ineffective assistance of trial counsel are insufficient to overcome the presumption of reasonable professional assistance and are insufficient to warrant habeas relief), *cert. den'd, Wogenstahl v. Robinson,* 133 S. Ct. 311 (2012). *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of appellate counsel failed to raise meritorious Sixth Amendment claim), *cert den'd*, 529 U.S. 913 (1999); *United States v. Crosgrove*, 637 F.3d 636, 663 (6th Cir. 2011) ("[C]onclusory assertions of ineffective assistance are not adequate.") (citing *United States v. Winkle*, 477 F.3d 407, 412 (6th Cir. 2007)).

Only one of Edmonds' ineffective assistance of counsel claims is subject to substantive review on its merits. Edmonds argued that his trial counsel rendered ineffective assistance when

counsel failed to file a pre-trial motion to sever Edmonds' trial from that of his co-defendant Hall.  As the Kentucky Court of Appeals plainly pointed out in its decision, Hall had already unsuccessfully moved for a severance of his own trial.  Edmonds' trial attorney therefore can hardly be faulted for declining to file a motion that obviously would be futile, given the prior ruling of the trial court on an identical motion filed by his co-defendant.

The Warden is entirely correct that Edmonds' attorney was not required by the 6th Amendment to file such a futile motion. *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000) (failure by counsel to do something that would have been futile is not ineffective assistance); *United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (counsel not ineffective for failing to pursue motions that would have been futile); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite."). *Calloway v United States,* 3:13-CV-75-S/3:07-CR-25-S-2, 2014WL 11398536 at *19 (W.D. Ky. Nov. 4, 2014)(failure of trial counsel to file a meritless motion cannot constitute ineffective assistance)(citing *Brown v. McKee*, 231 Fed. Appx. 469, 475 (6th Cir. 2002)).  Accordingly, the Kentucky Court of Appeals reasonably applied *Strickland* when it rejected this particular claim of ineffective assistance of counsel.  Edmonds is not entitled to relief on any of his many claims of ineffective assistance of counsel, procedurally defaulted or otherwise.

## CERTIFICATE OF APPEALABILITY

The final question is whether Edmonds is entitled to a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253(c)(1)(B) on any or all of the eight grounds raised in his petition.  A state prisoner who seeks to take an appeal from the dismissal of a habeas corpus petition must satisfy the COA requirements of 28 U.S.C. § 2253, which are jurisdictional in nature.  *Gonzalez*

*v. Thaler,* 565 U.S.134, 140-41 (2012); *Hill v. Mitchell,* 400 F.3d 308, 329 (6ᵗʰ Cir. 2005)(same). A COA will be issued only if reasonable jurists could debate whether the applicant has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  *Buck v. Davis,* ___ U.S. ___, 137 S.Ct. 759, 773 (Feb. 22, 2017)("The COA inquiry, we have emphasized, is not coextensive with a merits analysis. At the COA stage, the only question is whether the applicant has shown that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."). *See gen., Meddellin v. Dretke,* 544 U.S. 660, 666 (2005)(" A certificate of appealability may be granted only where there is "a substantial showing of the denial of a constitutional right."); *Ajan v. United States,* 731 F.3d 629, 630 (6ᵗʰ Cir. 2013); *Johnson v. Bell,* 605 F.3d 333, 339 (6ᵗʰ Cir. 2010)(same).

To do so, the prisoner must establish that reasonable jurists would find it debatable whether the District Court's assessment of the constitutional claims at issue was wrong, or could conclude that the constitutional issues raised are adequate to deserve further review.  *Buck*, 137 S.Ct. at 773; *Johnson,* 605 F.3d at 339 ("an applicant must show that reasonable jurists could debate that the petition could have been resolved differently or that the claims raised deserved further review.")(citing *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003)); *Webb v. Mitchell,* 586 F.3d 383, 401 (6ᵗʰ Cir. 2009).

In the cases in which the issue at hand is resolved based upon a procedural ruling, without consideration of the merits of the constitutional claim, the question under the statute is whether reasonable jurists could find it debatable that the District Court was correct in its procedural ruling *and,* if so, that the petitioner stated a valid underlying constitutional claim.  *See Gonzalez,* 132 S.Ct. at 647; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6ᵗʰ Cir. 2001).  Review of

65

a prisoner's habeas petition on appeal is limited to those issues specified in the certificate of appealability. *Harris v. Haeberlin,* 526 F.3d 903, 908 n.1 (6th Cir. 2008); *Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003).

The Court is required to make an individual assessment of the issues and to indicate which specific issue or issues satisfy or do not satisfy the standard of § 2253(c). *See Hill,* 400 F.3d at 329; *Frazier v. Huffman,* 343 F.3d 780, 788-89 (6th Cir. 2003)("It was therefore error for the district court to issue a blanket certificate of appealability without any analysis."); *Stanford v. Parker*, 266 F.3d 442, 450-51 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002)(same). *See also Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (discussing 28 U.S.C. § 2253(c)). With the above principles in mind we begin our consideration of the grounds addressed in Edmonds' petition.

Here, none of the grounds raised could be reasonably debated. The law of the case doctrine, a well-established judicial principle, prevents Edmonds from attempting to revive the failed arguments of his co-defendant Hall, all of which were considered on their merits and rejected previously by the undersigned Magistrate Judge, the District Court and in some instances the Sixth Circuit on appeal, as well. The remaining four grounds raised by Edmonds are no more debatable. Essentially, Edmonds simply reiterates the very arguments he raised on direct appeal that were rejected by the Supreme Court of Kentucky in its 2009 opinion. In no instance does Edmonds remotely explain how that same appellate court opinion unreasonably applied the clearly established precedent of the U.S. Supreme Court, or was contrary to such clearly established precedent. Edmonds claims of ineffective assistance for the most part are all procedurally defaulted and are mere argument headings rather than true arguments of the facts and law. For these reasons, the Magistrate Judge shall recommend that Edmonds be denied a certificate of appealability as to all issues raised in his current petition.

66

**RECOMMENDATION**

The Magistrate Judge having made findings of fact and conclusions of law recommends for the reasons set forth above that the habeas corpus petition of the petitioner be dismissed with prejudice and that the petitioner be denied a certificate of appealability.

**<u>NOTICE</u>**

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived.  *Thomas v. Arn,* 474 U.S. 140, 150-51 (1985); *United States v. Walters*, 638 F.3d 947, 949-50 (6th Cir. 1981); 28 U.S.C. § 636(b)(1)(c); Fed. R. Crim. P. 59(b)(2)

Copies to Defendant and Counsel of Record